**In re the Marriage of S.K.B., Appellant,**

v.

**J.C.B., Respondent.**

**No. WD 47391.**

Missouri Court of Appeals,
Western District.

Dec. 1, 1993.

Rehearing Denied Feb. 1, 1994.

---

Sharlie Pender, Independence, for appellant.

M. Sperry Hickman, Independence, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

This appeal involves a dispute by two parents over their daughter J.B. (child), who ranks in the top one percent in intelligence performance with exemplary grades and also has artistic talents. After a December 1990, motion by the father J.C.B. (Father), to modify the previous decree awarding custody to S.B. (Mother) the court entered an Order in December 1992 changing custody, and Mother appeals. When the motion was filed in 1990, the child was ten years old. When the case was decided in 1992, she was twelve.

She is now 13 years old. If this were a case involving a suit between two well-heeled landowners over a boundary dispute, the time, cost, and acrimony generated in obtaining final disposition by the judicial system would be marginally tolerable, here it was inexcusable.

Along the course of this action: 1) the Mother's attorney, who had been romantically involved with her prior to Father's motion, submitted fees in excess of $25,000; 2) neither side could agree to a special setting for the trial on the motion; 3) the domestic relations docket in Independence was, and continues to be, so backlogged this case was not reached after being on numerous regular settings; 4) the trial court, *sua sponte*, appointed a Master, a practicing attorney, to hear the motion in order to expedite resolution; 5) the Master turned down a joint request to appoint a guardian ad litem for the child; 6) the Master heard five days of testimony; however, only two days of the testimony are in the record; 7) only after a joint motion to speed up a report, did the Master submit a report recommending a change in custody—over seven months after the hearing.

The following chronology of events precede a recitation of the facts:

1/16/90 The most recent order on this child's custody in favor of the mother is entered by agreement. Father is given weekend and extensive summer visitation.

12/26/90 The motion for modification of custody, which is the basis of this suit, is filed by Father, alleging Mother left child alone for long periods of time and that Mother virtually lives away from home. Father further alleges he is in better situation to supervise.

2/1/91 Mother counters with request for increased child support, and to limit visitation due to Father's "mental, emotional and psychological abuse" of the child.

2/15/91 Father, in an unverified amended motion, attempts to add the fact that Mother "abandons the child nearly all evening to spend time with a male friend . . . child feels deserted and is denied parental supervision."

5/1/91 Mother moves for summary judgment. It is later overruled.

11/1/91 Mother again moves for a summary judgment with some 38 pages of suggestions, receiving the same fate as the previous motion.

2/28/92 Court refers matter to a Master. This order is amended on 3/9, 3/13 and 3/24. Hearing is limited to 5 days.

3/30–4/2 Master holds hearings.

8/19/92 Parties file "joint motion for Master's Report."

8/27/92 Court sends fax to Master to submit report as soon as possible.

11/9/92 Master's report is filed recommending change of custody. Not all the evidence has been transcribed. Due to cost constraints, only first two days testimony evidence is reduced to a transcript.

11/23/92 Mother objects to report.

12/3/92 Mother's attorney writes to Chief Disciplinary Counsel for approval to represent mother.

12/15/92 Attorney gets letter approving representation.

12/21/92 Court hears Mother's objections to report and elicits any changes since April hearing.

12/28/92 Court accepts Master's Report and orders joint legal and physical custody with primary residential custody to be with Father. Child support to mother stopped and Mother ordered to pay $100 per month. No award of attorney fees (Mother's attorney's fees exceed $25,000. Father's attorney's fees exceed $10,000. Total bill of Master of $4,956.40 divided equally.

\* \* \* \* \* \*

On appeal, some two months after the January 29, 1993 filing of the Notice of Appeal, the Mother presented a 500 page transcript which does not even include her own testimony. The transcript was limited to the day-long interview and interrogation of the child, with attorneys present, by the Master, testimony of the Father, and the deposition of a third witness. The testimony of approximately twenty witnesses is absent. Approximately two months later, after receiving a dismissal notice, the Mother filed a 99 page brief covering eight points for appeal with numerous subpoints. The Father filed a mo-

tion to dismiss because of rule violations in Mother's brief, plus her failure to provide a complete transcript. The Father then, out of time, filed his brief.

Oral argument was held in this court on Friday, November 12, 1993.

■ As a prelude to the facts and disposition of the case, the Father's motion to dismiss is taken up. The Mother's brief is verbose and the statement of facts presented is argumentative. However, a determination of what is in the best interests of the child, § 452.375.2., RSMo.1986, should not be thwarted by a defective appellate brief. Even more troubling is the fact that 3/5ths of the testimony (including that of the only psychologist to examine the child) is not available. Under Rule 81.12(a) all the "record, proceedings and evidence necessary to the determination of all questions presented," must be presented to the appellate court. *Nolfo v. Dubin*, 861 S.W.2d 136, 138 (Mo.App.1993). It was the Mother's duty as appellant to submit a complete and proper record. *Id.* It would be unfair to the child, and may result in an injustice, to rigidly enforce the Rules and dismiss the appeal. Therefore, the motion is denied.

As can be readily ascertained by the reader from the preceding chronology, the important facts involved in Father's motion to modify to gain custody have been clouded or lost in the legal and procedural wrangling of counsel. Based on the standard of review, and in light of the disposition of this appeal, a brief recitation about those salient facts involved is in order.

The child is extremely bright and has shown talents both artistically and musically. She turned thirteen just before this case was argued before this court. At the time the motion was filed, she lived with her mother who worked several jobs and was attempting to further her education. The Mother makes approximately $16,000 a year working several jobs, including working as a receptionist in a law office.

The child has two older brothers. One of her brothers was emancipated and had voluntarily moved from the mother's home following the 1984 dissolution. The other brother is seventeen years old, lives with the father, and has learning and emotional problems. He is in high school and has been in special programs for his problems since the third grade. There is some indication he may have mistreated the child during her weekend visitation with her father. This brother sired a child, out of wedlock, prior to the hearing before the Master. He recently returned to regular school.

The father remarried in 1991. He now lives in an area in a different school district than the one the child was attending prior to the trial court's action. He has a responsible job making approximately $60,000. There is some question of whether he has a drinking problem.

Prior to the filing of this action, Father's visitation had been liberal, even going beyond that required by the modified decree of 1987. Almost immediately upon Father's filing of this action, the child's Mother sent him a letter unilaterally limiting his weekend visitation to only daytime visits (i.e. from nine a.m. to six p.m.), requiring the child to be returned to her mother each evening. During this time, the father had not yet remarried. Additional evidence of the acrimony between the parties is evidenced by the fact that *ex parte* orders were entered against Father which restricted his access to Mother's home, and delineated payment of his support. Additionally, Father claimed that since the hearing he took police officers with him to pick up the child for visitation.

Approximately one month after he filed for modification of custody, the father encouraged the child to keep notes about her mother, particularly noting the times Mother was gone late at night, or all night, at her lawyer's (with whom she was previously romantically involved), including days which she was home alone sick. These notes were kept by the little girl for more than a year. It was admitted that some of the notes were made by her while at Father's house and with either his or his wife's help. Some of these exhibits also appear to have been written, in part, by an adult.

The focus of Father's motion was Mother's time away from the house (both out late at

night as well as all night), the child's preparing her own meals, doing her lessons, and getting ready for school alone, and becoming scared upon hearing sounds in and around the house at night. Upon receiving notice of the filing of this motion, Mother made new arrangements. Her brother, the child's uncle, who had been living with them moved out. During the time the uncle lived with them, he provided some babysitting services; however, more often he was a recluse obsessed with television and church activities. On one occasion, the uncle told the child her "Barbie" dolls were tools of evil. Soon after the uncle moved out, the child's grandmother, came to live at Mother's house.

Procedurally, the lawyers were never able to agree on a special setting date. As time and discovery dragged on, a judge assigned to the case noted the backlog of contested matters in Independence, and appointed a master to get the matter on to disposition. Another judge amended the reference to limit the hearing to five days. Neither Mother nor Father objected to the reference to a master. In a rare moment of agreement, they jointly requested a guardian ad litem be appointed to represent the child's interest. The Master denied this request before trial, as well as Father's renewed request made on the second day of hearing evidence.

Only two of the five days of hearing before the master were included in the transcript. The child's testimony (day one) and Father's testimony (day two) are in the record. The three days of trial comprising Mother's case is memorialized only in the Master's notes. Thus, the testimony of the mother, her brother, mother, friend-neighbor, co-workers, a psychologist and two of the child's teachers were not produced in this court. Likewise, testimony offered by Father of relatives, friends, and neighbors is not before this court. Mother introduced, and the court has the report of a psychologist who said the child was extremely bright and was performing well in school. That report cited the child's apprehension of the brother who lives with Father because he hits her. It further noted Father's coercion of the child to come live with him, and the girl's reluctance to hurt his feelings. The psychologist's report

(sans his testimony) concluded custody should remain unchanged.

The Master, in response to the request of the parties and the court to render his report, citing trials and other personal family matters as the cause of delay, rendered his report recommending a switch of custody. He reported the child was ambivalent as to which parent she wanted to live with, and noted both parents "at this time" were capable of providing an adequate environment. He correctly described the discovery process as "ridiculous," and commented that the procedural history of the lawsuit has "taken on a life of its own." With regard to the evidence, the report concluded the mother was ineffective, "largely absent, preoccupied ... during 1990," "had little consistency in dealing with her children," and that the child was "left to fend for herself." The report continues, commenting that in January 1990, after starting a romance with her attorney (who represented her in this action), her parenting skills and presence in the home declined.

The Master honed in on the fact the child had spent an inordinate amount of time at Father's prior to the motion, but that visitation was sharply curtailed after the filing of the motion to modify. The report briefly noted the psychologist's report. The Master's primary concern was which parent was most likely to allow the child frequent and meaningful contact with the other parent. Section 452.375.2.(8) and .3. RSMo Cum. Supp.1992. He felt the visitation crisis, coupled with the confidentiality problems associated with the mother dating her lawyer, led to the decision that a change in custody was appropriate.

The court, almost without change, adopted the Master's Report, and gave Mother extensive visitation. He is the fourth judge to have been assigned to this motion.

█ The standard of review of a court tried matter is contained in Rule 73.01 and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In actions involving custody, the welfare of the child is the paramount consideration. *Aston v. Aston,* 810 S.W.2d 720, 721 (Mo.App.1991).

## I. Guardian Ad Litem

The Mother contends the trial court erred in failing to appoint a guardian ad litem before ordering the transfer of custody because such an appointment is mandatory where there are allegations of neglect involved and because both parents requested such appointment.

**Section 452.423.1, RSMo Supp.1991,** provides:

> In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. The court *shall* appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.
>
> (Emphasis added)

The plain language of the statute clearly mandates the appointment of a guardian ad litem in all contested custody proceedings where a party alleges abuse or neglect of a minor child.

The Father argues he did not allege "neglect" within the meaning of Section 452.-423.1. Although the statute does not define the term "neglect," this court, in previous cases, has relied on the term as it is defined under Chapter 210 which contains laws pertaining to child protection. *See Hough v. Hough,* 794 S.W.2d 252, 253 (Mo.App.1990).

**Section 210.110(5) RSMo 1986** defines "neglect" as:

> [F]ailure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for this well-being.

This court recently relied on the above definition in *Frazier v. Frazier,* 845 S.W.2d 130 (Mo.App.1993), in determining whether allegations in a motion to modify child custody were sufficient to require appointment of a guardian ad litem. In *Frazier,* this court found allegations that the father had failed to adequately supervise the minor children while in his custody were sufficient to trigger the mandatory appointment of a guardian ad litem pursuant to § 452.423.1. *Id.* at 131–32.

The court reasoned that supervision could be construed as "care necessary for [the child's] well-being" under § 210.110(5). *Id.* at 132.

■ In this case, Father's motion to modify alleged the following, in pertinent part:

> (d) [T]he mother has left the child by herself for long periods of time or in the care of an Uncle; the mother virtually lives away from the home where the child resides and the child sees to her own care.

In Father's suggestions in support of his motion, he alleged due to Mother's absence from the custodial home, the child has been "denied parental supervision, parental guidance, parental nurturing and parental contact, all against the best interest of the child."

In addition to the allegations contained in the motion, this record is replete with references made by either Father or his attorney regarding Mother's alleged "neglect" and "inadequate supervision." For example, when asked in an interrogatory to specify how or why the allegations in his motion to modify are detrimental to the child's best interests, he responded that, "[t]he fact that [the child] is neglected and unsupervised jeopardizes her health and her emotional well-being." Father also stated in several of his interrogatory answers "[t]he neglect of [the child] is a substantial and continuing change in circumstances and is detrimental to [her] best interests." It appears self-evident from the record the father's primary basis for requesting a change of custody rests on the allegations that the mother was frequently absent from the home and failed to adequately supervise her daughter while the child was in her custody.

Although Father claims his allegations of "emotional neglect" do not rise to the level of "neglect" as contemplated by § 452.423.1, this court does not agree. As previously noted, inadequate supervision has been construed to be a type of "neglect" for purposes of § 452.423.1. *Frazier,* 845 S.W.2d at 132. Even if the trial court is not convinced after receiving all of the evidence that the alleged conduct amounted to neglect, the court may not wait until the end of the trial to see if the evidence supports the allegations before de-

termining whether to appoint a guardian ad litem. *Id.* As such, Father's allegations of inadequate parental supervision were sufficient in this case to require the appointment of a guardian ad litem pursuant to § 452.-423.1.

■ Even assuming *arguendo* that the conduct alleged in this case does not rise to the level of neglect contemplated by § 452.-423.1, it was still within the discretion of the trial court to appoint a guardian ad litem. *J.L.E. v. D.J.E.*, 675 S.W.2d 456, 459 (Mo. App.1984). Even if the court fails to find that the allegations amount to abuse or neglect, the circumstances of the case may still warrant the appointment of a guardian ad litem. The case of *S.L.J. v. R.J.*, 821 S.W.2d 104 (Mo.App.1991) involved a contested modification of custody proceeding in which the father had requested the court to appoint a guardian ad litem but was denied. The mother filed a cross-motion to modify which included several allegations against the father. Although the Eastern District in *S.L.J.* concluded that the allegations did not amount to abuse or neglect, the court found that § 452.423 provides for the appointment of a guardian ad litem in any contested custody proceeding if the totality of circumstances warrant it. *Id.* at 106–107.

"[T]he overriding duty of the court [is] to serve the best interest of the child." *Hough*, 794 S.W.2d at 254. The parents' attorneys here were protecting their own clients' interests, not the child's. The purpose of a guardian ad litem is to insure that the child's interests are adequately represented and protected. *In re G*, 389 S.W.2d 63, 66 (Mo. App.1965). The following duties of the guardian ad litem are set forth in § 452.-423.2:

(1) Be the legal representative of the child at the hearing, and may examine, cross-examine, subpoena witnesses and offer testimony;

(2) Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in order to ascertain the child's wishes, feelings, attachments and attitudes. If appropriate, the child should be interviewed;

(3) Request the juvenile officer to cause a petition to be filed in the juvenile division of the circuit court if the guardian ad litem believes the child alleged to be abused or neglected is in danger.

Several factors present in the instant case make it evident to this court the child's interests would have been better served by appointing a guardian ad litem. In addition to the allegations of neglect which are indicated in the record, both parents also requested that a guardian ad litem be appointed for their daughter. Even after receiving such a request from both parents' attorneys, however, the Master failed to recommend appointment of a guardian ad litem.

Moreover, in the mother's cross-motion to modify as to child support and visitation, she alleged, inter alia, that Father had engaged in "mental, emotional and psychological abuse" of the child. The record also reveals that at one point the child had been physically abused by an older brother during a stay at the father's home.

Further, the record reveals that the relationship between the parents is acrimonious and there were indications of manipulation and intimidation of the child by the Father which raises concerns regarding her emotional stability. Also, the record indicated the mother is romantically involved with the attorney representing her in this matter which might raise an issue of conflicting interests.

Additionally, the record also reflects the child was compelled to testify during an "interview" with the Master which lasted several hours during which the attorneys questioned and cross-examined her. Although the child was assured that nothing in her testimony would be revealed to either of her parents, it seems unlikely she would not have been somewhat hesitant to reveal all of her true feelings when one of the attorneys questioning her was her mother's boyfriend. The record further shows that at the hearing, the child was generally ambivalent about her preference regarding which parent she would rather live with.

Considering the foregoing, it is the opinion of this court that the circumstances in this case warranted the appointment of a guard-

ian ad litem. The failure of both Master and the trial court to appoint a guardian ad litem was both an abuse of discretion and a violation of § 452.423.1. Since the most important facet of this case, the child's best interest, was not represented, a reversal and rehearing is mandated.

## II. USE OF A SPECIAL MASTER IN A CUSTODY CASE

This court has found no cases which deal with the issue of whether it is appropriate to have special masters decide issues of child custody. This court does not hold it is *never* appropriate to refer child custody case to a master, but rather it holds under the facts of the case at bar it was inappropriate. *Cf. Knopke v. Knopke*, 837 S.W.2d 907, 914 (Mo.App.1992); *Winter v. Winter*, 712 S.W.2d 423 (Mo.App.1986); *Roosevelt v. Roosevelt*, 699 S.W.2d 372 (Tex.App. 8th Dist. 1985) writ dismissed W.O.J. (March 5, 1986) (holding appointment of master was appropriate).

The use of a master is permitted under Rule 68.01.

> (a) Appointment and Compensation. Each circuit court in which any action is pending may appoint a master therein....
> (b) Reference. A reference to a master *shall be the exception* and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference *shall be made* only upon a showing that some *exceptional condition requires it.*

(Emphasis added).

Appointment of the Master was erroneous because this case did not involve exceptional circumstances. Rule 68.01(b). Neither the statute, nor Missouri case law, defines the term "exceptional conditions." The United States Supreme Court in *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), reh'g denied, 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 560 (1957) has, to a limited degree, addressed the issue. In *La Buy*, where a district court judge entered a reference to a master in a consoli-

dated antitrust suit under Federal Rule 53(b), the Court noted calendar congestion alone was not such an exceptional circumstance as to warrant reference to a master, and neither was the fact that the case had complex issues or fact and law nor that it may be a protracted trial. *See also Russell v. Thompson*, 96 Nev. 830, 619 P.2d 537, 539 (1980); *Gaskie v. Gaskie*, 534 P.2d 629 (Colo. 1975); *Bell v. Bell*, 540 S.W.2d 432 (Tex.Civ. App. 1st Dist.1976). Rule 68.01(b) is based on Federal Rule 53(b). As a general rule, calendar congestion alone would seem to be insufficient to provide the exceptional conditions under Rule 68.01. But, as pointed out later, by its very nature a custody case does not lend itself to being conducted by, and potentially decided by a master. Had the parties and a guardian in this case been in agreement for an appointment under Rule 68.01, a much closer question would have been presented. After all, there are few courts today which are not experiencing an extraordinary backlog, and few cases which actually make it to trial are short, uncomplicated matters. *See La Buy*, 352 U.S. at 259, 77 S.Ct. at 315. In the present case, the reason the trial court sent the matter to a special master was due to court congestion in Independence and its aggravation with the procedural "games" played by the attorneys. These stated reasons do not provide sufficient cause for reference to a master because this was a relatively simple, single issue case regarding the custody of a little girl.

Masters are appointed to "aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause," and not to place the judge into a position of a reviewing court. *Russell v. Thompson*, 96 Nev. 830, 619 P.2d 537, 539 (1980) (citing *Ex parte Peterson*, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920)). A court cannot delegate or abdicate, in whole or part, its judicial power. *Bell v. Bell*, 307 So.2d 911, 914–915 (1975). The court is required to examine and consider the evidence for itself to determine "whether under the law and the facts the court is justified in entering the judgment recommended by master;" i.e., whether there had been a sufficient change in circumstances to award a modification of custody.

*Id.* at 914. The lack of a record likewise hampered any meaningful review of the Master's Report by the trial court. Here although the focus of the suit was the child, she was not a party and the matter should not have been sent to a master without a guardian to represent her legitimate interest in the outcome.

*Mehra v. Mehra,* 819 S.W.2d 351 (Mo. banc 1991), is one of the few reported Missouri cases where a master was appointed in a custody case (other than in habeas action filed in the Court of Appeals). The Supreme Court's opinion did not address the issue of the appropriateness of the use of masters in these types of cases. Furthermore, this court does not interpret *Mehra* to indicate approval of reference to masters in *all* custody cases.

 This court believes the use of a master in custody cases should be strictly limited to only the most exceptional conditions as contemplated by Rule 68.01. Because of the nature of custody cases it would seem to be the better practice to have a sitting judge hear and decide the matter. Certainly, Rule 68.01 is broad enough to allow many aspects of domestic law to be handled by a master; i.e., calculations and distributions of marital property. In the case at bar, it was in error to have referred this matter to a Master. Another example of the problems arising from use of a master in custody issues is the breadth of powers given by the court. In the case at bar, the master was given ultimate authority as to appointment of a guardian ad litem. This was a decision that should be made by a court.

Moreover, this matter should have been heard by the court because of the importance of the court's "opportunity to observe the demeanor of the conflicting parties is not obviated by crowded court calendars, which prompted" the court to assign this to a master. *Bush v. Bush,* 590 So.2d 531, 532 (Fla. Dist.Ct.App.1991). Litigants in custody battle have the right to a full and fair hearing concerning the ultimate disposition of a child. *Moser v. Moser,* 108 Nev. 572, 836 P.2d 63, 66 (1992) (holding referee's findings were not clearly erroneous). This however, was not possible in the present case because there

was not even an opportunity for a full and fair "paper review" of the Master's hearing since the record of this hearing is incomplete. *Cf. Dickrede v. Dickrede,* 14 Ohio App.3d 292, 470 N.E.2d 925, 930 (1984) (court held it was erroneous for court to adopt referee's recommendation where the transcript not filed at time court reviewed Master's report and the report contained no facts upon which the court could determine a change in custody was appropriate). Only two out of the five days of hearing are on the record. This court however does not dismiss this action on the basis of an incomplete record. *But see Massey v. Massey,* 475 So.2d 802, 806 (Miss. 1985) (parties in a divorce action, where children were not involved, who were aware no record was being made, could not later complain of procedural irregularities after the fact.) Even though "the parents are the natural guardian of the child, there is a profound question as to whether they should be allowed to waive procedural rights directly affecting the child's future residential status and personal welfare." *Bush v. Bush,* 590 So.2d at 532. The child should not have to pay for her parents' questionable decision not to have a complete record of the proceeding. The child's interests included having a complete record for review by both the trial court and this court were not represented. *But see Mitchell v. Mitchell,* 711 S.W.2d 572 (Mo.App.1986). (meaningful review not denied by absence of a transcript in a case involving two adults in a case involving dissolution and property division.)

### III. Summary Judgment and Attorney's Fees

Because of the disposition here, remand for a rehearing before a judge, the court need not address several of the points argued by Mother. These points include Father's attempt to amend his motion, loss of jurisdiction to receive the Master's Report, and sufficiency of the evidence to support the order. The following two points are, however, taken up and ruled against the Mother.

### A.

 Mother appeals the denial of her two motions for summary judgment. "It is well

settled that the denial of a motion for summary judgment is not subject to appellate review." *Kabir v. Missouri Dept. of Social Services*, 845 S.W.2d 102 (Mo.App.1993). This indirectly relates to point B, which follows.

### B.

The court did not award Mother her attorney's fees and costs totaling $25,967.80. The Master aptly noted much of her attorney's time was spent; 1) preparing the motions for summary judgment (which alleged there were no fact questions to be decided); 2) making copies and collating documents (in excess of 47 hours); and, 3) churning out discovery. Also, a considerable amount of time was spent addressing the legal and ethical issues of her attorney's continued romantic involvement with his client. This court affirms the trial judge's denial of this request.

\* \* \* \* \* \*

This matter should have been decided in far less time; however, the court is not unmindful of the added time and expense of retrial because of the decision handed down today. The court is not unmindful of yet another delay and another resulting switch in the child's home and school. It is decided that under these very unusual circumstances, the child who has been with the Father since December, 1992, will be allowed to stay with him through the retrial. At this stage of the game, and with the hand dealt, this seems to be the best solution. The lack of a guardian to protect the child when the parents' wrangling overlooked the child's best interests, plus the allegations of neglect cause this result. Before concluding, the court makes a few final statements. Contested child custody proceedings should, almost without exception, be heard by and decided by a sitting judge who can observe the demeanor of the witnesses. If there is a backlog of these types of family law cases in Independence, additional judicial personnel should be immediately dispatched to remedy delay. Section 452.395.1., RSMo 1987 states in no uncertain terms: "Custody proceedings shall receive priority in being set for hearing." Courts should not be unmindful of the costs in ap-

pointing a guardian ad litem, but in cases such as this one, a guardian should have been appointed by the court. It is hoped the parents will try to conduct themselves appropriately in order to spare this child any more anguish or uncertainty. Ultimately, the responsibility for parenting this now thirteen year old child rests with her parents. The court system, as Judge Ely noted, will not look kindly at their coming back into court fighting over such issues as visitation, piano lessons, or providing medical needs.

This case is affirmed as to the attorney's fees, but is reversed and remanded as to permanent custody with the following directions: 1) the child is to remain in the father's temporary custody; 2) the court shall immediately appoint a guardian ad litem for the child; and, 3) the court shall specially set the retrial forthwith and render a decision within 20 calendar days from the completion of the hearing. Costs are assessed against the respondent.

Hanna, P.J., concurs.

Fenner, J., concurs with attached concurring opinion.

FENNER, Judge, concurring.

I concur with the majority opinion except to the extent that the majority opinion states as follows:

As a general rule, calendar congestion alone would seem to be insufficient to provide the exceptional conditions under Rule 68.01. But, as pointed out later, by its very nature a custody case does not lend itself to being conducted by, and potentially decided by a master. Had the parties and a guardian in this case been in agreement for an appointment under Rule 68.01, a much closer question would have been presented.

The above statement indicates grave reservation that calendar congestion is sufficient as an exceptional condition under Rule 68.01 to allow for the appointment of a master. I believe that calendar congestion can be sufficient to constitute an exceptional condition under Rule 68.01. Furthermore, to the extent that the majority opinion could be inter-

preted as prohibiting the appointment of a master in any custody case but under the rarest of circumstances, I take exception.

I do not feel that it is proper for a trial court to totally abdicate its responsibility to assure that the best interests of the child are addressed in a custody dispute, but I believe that the need for the assistance of a master is best left to the sound discretion of the trial court within the confines of Rule 68.01. I particularly do not believe that we should preclude the appointment of a master in the event that all parties, including a guardian ad litem who may be required or appointed within the discretion of the court, agree to the appointment of a master.

The concept of masters in custody disputes is not foreign to Missouri courts. Masters have been used to assist the court in the following cases:

1. *State ex rel. Busch by Whitson v. Busch*, 776 S.W.2d 374 (Mo. banc 1989). This was a habeas corpus proceeding before the Missouri Supreme Court with evidence on the issues of paternity, custody, temporary custody, visitation and child support taken by a special master.

2. *R.J. v. S.L.J.*, 732 S.W.2d 574 (Mo. App.1987). This was an action for dissolution of marriage where a special master was appointed to hear custody and visitation issues.

3. *Goldberg v. Goldberg*, 691 S.W.2d 312 (Mo.App.1985). This was an action for dissolution of marriage which involved issues of custody and support. A special master was appointed to take evidence in this case.

4. *Ex Parte Ray*, 573 S.W.2d 152 (Mo. App.1978). This was a habeas corpus proceeding involving child custody in which a special master was appointed to hear evidence.

5. *Matter of WKM*, 537 S.W.2d 183 (Mo.App.1976). This case was also a habeas corpus proceeding involving child custody in which evidence was presented to a special master.

In the case at bar, a guardian ad litem was required as discussed in the majority opinion. However, since a guardian ad litem was not appointed, no one represented the interests of the child in regard to this cause being assigned to a master. Because the child's interests were not represented in this decision, I concur with the majority opinion requiring a new trial. It is also troublesome to me that there was no transcript of the evidence taken by the master for review by the trial court or on appeal. It seems to me that the trial court is not able to properly review the findings and conclusions of a master without a transcript of the evidence. To accept the report of a master in a custody proceeding without aid of a transcript is too great of an abdication of the responsibility of the court to assure that the child's best interests are met.

I agree with the position of the majority that in accordance with Rule 68.01 appointment of a master should be the exception and not the rule. I further agree that the courts have a most important responsibility to see that custody questions are resolved in the best interest of the children.

With the exception of the matters addressed herein, I concur with the majority opinion.