**John D'AGOSTINO, Respondent,**

v.

**Paul D'AGOSTINO, Appellant.**

**No. WD 58903.**

Missouri Court of Appeals, Western District.

Aug. 14, 2001.

Rehearing Denied Oct. 2, 2001.

Michelle M. Suter, Leakwood, KS, Attorney for Appellant.

Michael A. Preston, Kansas City, Attorney for Respondent.

Before LOWENSTEIN, P.J., ULRICH, J. and KENNEDY, SR. J.

LOWENSTEIN, Presiding Judge.

### Overview

The litigants are brothers who own equal shares in a corporation that has two divisions, construction and service. One of the brothers filed suit to dissolve the corporation judicially under §§ 351.494 and 351.502, RSMo 2000. The main disagreement during the proceedings involved the equitable distribution of equipment and inventory, much of which were linked to both divisions. The brothers reached an agreement on the bulk of the property, but disagreed over some of the property and allocation of the corporation's bills to each of the respective divisions. The trial court, sitting as a court of equity, and with the aid of a special master, inventoried all of the property, attempted to distribute the property pursuant to an agreement, allocated responsibility for company bills, and effectuated the dissolution into two separate entities. The trial judge's frustration with the excessive time taken in the legal proceedings due to wrangling by the litigants is echoed by this court. The presentation of the facts, procedural history, and understanding of the points raised by the Appellant have been most diffuse.

It is only because this court desires to allow the parties to bring resolution to their differences that some of the deficiencies with regard to Rule 84.04 have been overlooked.

### Factual and Procedural History

John D'Agostino (hereafter John or Respondent) and Paul D'Agostino (hereafter Paul or Appellant) are brothers and equal owners of Anthony, Inc. Anthony, Inc. has essentially two divisions: one division, which is supervised by Paul, provides *service* for residential and commercial plumbing, heating and cooling; the other division, which is supervised by John, provides commercial and industrial *construction* of plumbing, heating and cooling. In 1998, John filed a petition for the dissolution of the corporation. Paul filed an answer and counterclaim. A notice of dismissal was filed by Paul with regard to three of the counts in the counterclaim and an order was entered by the trial court dismissing those claims without prejudice. Count IV of Paul's counterclaim remained. In Count IV, Paul sought specific performance of a settlement between the parties, which was agreed to after a meeting conducted by a third party on March 3, 1998.

Both parties filed motions for summary judgment as to Count IV, and the trial court issued an entry of partial summary judgment and order. The trial court found that the parties had made a valid and enforceable agreement entitling Paul to a partial summary judgment on Count IV of his counterclaim, requesting specific performance of the parties' agreement. The trial court also ordered, among other things that: 1) further court review would be necessary to divide the "shared equipment" listed on "Exhibit A," as it had not actually been divided, and to finalize the division of accounts payable and receivable agreed to by the parties; 2) the parties were to make an agreement to divide the "shared equipment" as identified on "Exhibit A"; 3) the parties were to appear before the court for a hearing to allocate the remaining equipment or assets not provided for by the trial court or "Exhibit A"; and 4) John was granted judgment on the claims contained in Paul's petition and the claims were dismissed with prejudice.

In January of 1999, a hearing was held on John's motion for new trial to clarify or amend its entry of partial summary judgment and order. The trial court denied John's motion for a new trial, but decided to amend the entry of partial summary judgment and order. Pertinent here, the trial court determined:

> To the extent a division of all equipment inventory is not included thereon, each party is hereby awarded that inventory which it solely uses, free and clear of all claims, demands or interest of the other division. Any inventory purchased for use on a specific project or job shall be identified and remain with that division. All remaining inventory not otherwise designated or identified shall be divided equally between Plaintiff and Defendant.

In March of 1999, a hearing was held on Paul's motion to amend the partial summary judgment and order. The trial court subsequently issued an order to amend the judgment, ordering the parties to meet at their earliest convenience to divide any shared equipment, inventory or supplies, and, if the parties could not agree, they were to submit a sealed bid for those shared assets.

The trial court issued an order on August 5, 1999, listing property to be set over to the construction (John) or service division (Paul) that had been listed as "shared property" in "Exhibit A." On September 2, 1999, the trial court appointed a Master, pursuant to Rule 68.01, to implement the August 5, 1999 order, and to aid the par-

ties in reaching a finalized order. The Master held an evidentiary hearing on December 2, 1999, to determine each party's rights to the disputed inventory. The Master filed his report on April 12, 2000. On July 12, 2000, the trial court filed its judgment and on September 25, 2000, filed its amended judgment, substantially adopting the Master's report. Paul appeals.

This appeal concerns issues arising from the division of Anthony Inc.'s inventory and issues arising from the possession of a backhoe, trailer, and truck. The following language from the judgment describes the tone of this case:

> The parties themselves were in the best position to make determinations of fairness and equity with respect to remaining inventory and equipment issues. However, the parties have consistently been unable to resolve their differences on almost any issue. Therefore, the Court and Master have attempted to make these determinations with respect to highly technical and specialized inventory and equipment consistent with the goals of being fair to both sides and effectuating their previous agreement. *It is important to note that the Court and Master's jobs have been made much more difficult by the parties' conflicting accounts, charges of malfeasance and criminal conduct, mistrust, vituperation and absolute refusal to abide by procedures, agreements and orders previously entered into by the parties in front of the Court and the Master. Both parties are responsible to some degree for this atmosphere.* (emphasis added).

### Standard of Review

 On appeal from the decision of a trial court which appointed a Master pursuant to Rule 68.03, this court reviews the decision of the trial court, not the findings and recommendations of the master. *M.F.M. v. J.O.M.*, 889 S.W.2d 944, 957 (Mo.App.1995). The standard of review of a court-tried case is enunciated in *Murphy v.. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[1] *Rasse v. City of Marshall*, 18 S.W.3d 486, 489 (Mo.App.2000). The trial court's judgment will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* This court accepts the evidence and inferences most favorable to the trial court's decree and disregards all contrary evidence. *Smith v. Smith*, 985 S.W.2d 836, 840 (Mo. App.1998).

### I.

 Paul's first argument on appeal contains two sub-points. This court will not review sub-point A due to its disregard of the requirements of Rule 84.04(d). Rule 84.04(d) requires that each point relied on: (1) identify the trial court's ruling or action that the appellant is challenging on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error. *Wilson v. Carnahan*, 25 S.W.3d 664, 666 (Mo.App.2000). Although Paul identified the trial court's ruling that he is challenging on appeal, he did not state the legal reasons for his claim and in turn, did not explain why his legal reasons support his claim of reversible error. " 'Insufficient

---

1. The parties do not seek review of the issuance of partial summary judgment granting Paul specific performance of the agreement. As such, *ITT Commercial Fin. Corp. v. Mid–* *Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) is not the applicable standard of review.

points relied on preserve nothing for this court to review.'" *Id.* at 667 (quoting *Hall v. Missouri Bd. of Probation and Parole,* 10 S.W.3d 540, 544 (Mo.App.1999)). Because sub-point A of Paul's first point relied on preserves nothing for appellate review, this court declines to address it. *Id.* at 667. Sub-point B of Paul's first point relied on is difficult to discern; however, this court will review it.

■ Paul argues that some of the trial court's findings in its June 27, 2000 judgment,[2] referring to the division of inventory, were in contravention of the trial court's December 10, 1998, "Entry of Partial Summary Judgment and Order." Paul contends that because the order was final and it was never appealed from by John, it became the law of the case. Paul further argues that the trial court's finding, that his request for an $80,000 credit was not supported by the evidence, was against the weight of the evidence.

Paul claims that because Exhibit A was incorporated into the partial summary judgment and order, the values and amounts listed for inventory and equipment were binding on the court and the parties for further proceedings. As indicated *supra,* Exhibit A did not address the inventory shared by the service and construction divisions, and the division of such inventory has been a main issue of contention since the issuance of the partial summary judgment and order.

■ It must first be noted that the December 10, 1998, "Entry of Partial Sum-

mary Judgment and Order" was not final and, therefore, not appealable. This court only has jurisdiction over final judgments. *Perniciaro v. McDonald,* 974 S.W.2d 620, 621 (Mo.App.1998). A judgment, order or decree is final and appealable only when it disposes of all the issues for all parties in the case and leaves nothing for future determination. *Jackson v. Jackson,* 970 S.W.2d 391, 392 (Mo.App.1998). Under Rule 74.01(b), in cases involving multiple claims, a trial court can enter judgment on fewer than all of the claims and certify the judgment for appeal upon finding that there is "no just reason for delay." However, even when the trial court certifies its judgment as final for purposes of appeal, the trial court's determination is not conclusive and this court must still decide whether the partial judgment actually qualifies as a final judgment. *Lumbermens Mut. Cas. v. Thornton,* 36 S.W.3d 398 (Mo.App.2000).

■ Here, however, the trial court's order did not resolve all the issues as to all the parties or expressly find there was no reason for just delay. Rather, it is apparent from the language in the trial court's order that it was not intended to be a final order:

> [W]hile the parties specifically intended to incorporate the schedule, attached hereto as Exhibit A into their agreement, the "shared" equipment was not actually divided between them, further, due to the continued operation of the business, further court review is required to finalize the division of accounts

2. Specifically, Paul complains of paragraphs 40 and 41, which state:

> 40. That the request by [Paul] for credit for inventory purchased prior to the move from the Oliver location, but allegedly not taken, in the amount of $80,000 is not supported by the evidence. Further that the affidavits, and information supplied in those affidavits, supportive of this request,

should have been submitted at the December 2, 1999, hearing.

> 41. That the Master has reviewed the affidavits and finds specifically that the affidavits and the evidence presented at the December 2, 1999, hearing do not supply sufficient evidence for a credit of $80,000 for inventory purchased by [Paul] and allegedly appropriated by [John].

payable and receivable agreed to by the parties. The retention of equitable jurisdiction by the Court is necessary to effect a full and complete adjudication between the parties. . . . .

The trial court also recognized in its order the need for a hearing "to allocate the remaining equipment or assets of the corporation not provided for herein. . . ." Thus, until a final judgment was reached in this case, the trial court was free to "open, amend, reverse or vacate an interlocutory order." *Englezos v. Newspress and Gazette Co.*, 980 S.W.2d 25, 36 (Mo. App.1998). As stated in *State ex rel. Schweitzer v. Greene*, 438 S.W.2d 229, 232 (Mo. banc 1969):

> Logic and justice would seem to indicate that a trial court should be permitted to retain control of every phase of a case so that it may correct errors, or, in its discretion, modify or set aside orders or judgments until its jurisdiction is extinguished by the judgment becoming final and appealable.

Furthermore, even if the trial court's determinations were final and appealable, they did not constitute the law of the case as Paul suggests.

■■■ The "law of the case" is a doctrine which applies when a reviewing court has already decided an issue in a case. *Angoff v. Am. Fin. Sec. Life Ins. Co.*, 891 S.W.2d 833, 836 (Mo.App.1994). It governs successive appeals involving substantially the same issues and facts. *Bandy v. State*, 847 S.W.2d 93, 94 (Mo.App.1992). "The decision of an appellate court is the law of the case on all points presented and decided and remains as such throughout all subsequent proceedings both in the trial and the appellate courts. . . . ." *Brooks v. Kunz*, 637 S.W.2d 135, 138 (Mo.App. 1982). Here, a reviewing court has yet to rule on any issue in this case and, as such,

the law of the case doctrine is not applicable.

■■■ Finally, Paul argues that the trial court's finding, that his request for an $80,000 credit was not supported by the evidence, was against the weight of the evidence. The $80,000 credit Paul sought was for reimbursement of inventory purchased by the service division. Paul claims John did not allow him to remove some of the service division's inventory when he moved the service division out of the shared location. Generally, the service division would order materials weekly, the shelf-life ranging from one week to six months. The construction division, on the other hand, would bid on jobs and routinely overestimate its need of generic materials. After the completion of a construction job, eight to ten percent of the generic materials purchased for a job would be returned to inventory.

In January of 1999, after a hearing, the trial court issued an order stating that each party was entitled to the inventory used solely by its division or purchased for use in a specific project. The remaining inventory was to be divided equally.

In August of 1999, Paul moved his division from the company's shared location. He moved some, but not all, of the inventory the service division used solely and/or had purchased for use in a specific project. Paul took a large portion of the service division's inventory that was located in the warehouse, but was prevented from taking some of the items that belonged to his division. After Paul vacated the shared location of the company, the ownership of the inventory that remained was in dispute.

The Master held an evidentiary hearing on December 2, 1999, to determine each party's rights to the disputed inventory. At the hearing it was determined that both divisions had the right to use any of the

company's inventory, even though there was inventory each division used exclusively and inventory that was contributed by only one of the divisions. The company never formally separated or identified the inventory by division, and there was never any accounting of the inventory used or contributed by either division. No documents reflect the contribution by each division of the materials inventory that existed on the shelves at the shared location at the time Paul moved his division the week of August 9, 1999.

 Paul testified concerning the service department's invoices for purchases of inventory. He claimed that the invoices showed he had purchased inventory "in excess of $80,000." Dan Croslin, the service manager, testified and provided to the Master a list of items refused to be provided to the service division. Ed Burnett, who ordered stock for the company, testified that he continued ordering the same amount of product after the division of the company until the service division moved out of the shared location. The trial court was free to believe or disbelieve all or any portion of this evidence. *Stangeland v. Stangeland,* 33 S.W.3d 696, 702 (Mo.App. 2000). "[T]he credibility of witnesses and the weight to be given their testimony is a matter for the trial court." *Morris v. Nat'l Refractories & Minerals,* 21 S.W.3d 866, 868 (Mo.App.2000). Based on this evidence, the trial court's judgment, with regard to its denial of Paul's request for an $80,000 credit, was not against the weight of the evidence.

Paul's first point is denied.

## II.

 Paul argues in his second point that the trial court exceeded the scope of its authority by including in paragraph 24 of the conclusions of law section of its judgment that "[i]n exchange for this final and complete separation of Anthony, the parties release each other from any and all liabilities regarding any claim in relation to the division and separation of Anthony unless otherwise reserved by order of the Court." Specifically, Paul refutes the trial court's ability to order him to release John from claims arising from John taking a truck, backhoe and trailer.

 This court's research produced no authority for the proposition that a trial court has the authority to release further claims of parties in a judgment. See *In re Marriage of Perkel,* 963 S.W.2d 445, 454 n. 8 (Mo.App.1998). Further, the parties did not include any release language in their agreement. See also *Emerick v. Mut. Benefit Life Ins. Co.,* 756 S.W.2d 513 (Mo. banc 1988) (evidence was insufficient to establish that insurer and one of its general agents had entered into settlement agreement releasing insurer from future claims prior to agent's resignation; neither agent nor insurer discussed release prior to agent's resignation, and agent had refused to sign agreement containing release provision after his termination). "A release is a matter of agreement and is governed by contract principles." *Hatfield v. Cristopher,* 841 S.W.2d 761, 766 (Mo.App.1992). "[E]quity will not create a contract for the parties if they themselves have not agreed." *Emerick,* 756 S.W.2d at 518. The trial judge's sense of frustration with the acrimony and time spent in this suit is evident, however, the court cannot decree an end to the hostility. Thus, the cause is remanded solely for the purpose of removing paragraph 24 of the conclusions of law portion of the trial court's judgment.

## III.

 Paul argues in his third point that the trial court erred in finding in paragraph 68 of the judgment that Paul did not

make a payment on the debt found to be owed to John in the accountant's amended report because: 1) the trial court never entered an order finding Paul owed John until June 27, 2000; 2) an accountant's report was never finalized and provided as set out in the December 1998 judgment; and 3) the trial court acknowledged in paragraph 69 that a final determination as to any amounts owed other than rent and the judgment rendered December 10, 1998, had yet to be made.

■■■ Paul cites no authority in support of this point. "When an appellant cites no authority and offers no explanation why precedent is unavailable, appellate courts consider the point waived or abandoned." *Jordan v. City of Kansas City,* 972 S.W.2d 319, 322 (Mo.App.1998). Point III is therefore considered abandoned.

### IV.

Paul argues in his fourth point that the trial court erred in its amended judgment: 1) by finding in paragraphs 58 and 79 that the truck, backhoe and trailer belonging to Paul and taken by John are collectively valued at $37,000; 2) by finding in paragraph 12 that upon Paul's failure to make any payment as ordered, those three items would become the property of John for the value of $37,000 because the order was against the weight of the evidence and because it failed to consider the possession and use of those items for one year by John at the exclusion of Paul; and 3) because the restriction on any credits to any judgment entered against Paul for an offset on equipment in paragraph 12 misapplies the prior order of the trial court which stated that any offset would be at the option of the party indebted.

Paul also cites no authority in support of this point. "When an appellant cites no authority and offers no explanation why precedent is unavailable, appellate courts

consider the point waived or abandoned." *Id.* Point IV is therefore considered abandoned.

### V.

■■■ Paul argues in his fifth point that the trial court erred by incorporating and adopting the Master's findings into the judgment of the court because the findings are not supported by substantial evidence in that the judgment erroneously declares and misapplies the law in that neither the testimony nor the exhibits were retained by the Master or requested to be provided to the court for its review.

Specifically, Paul argues that the trial court's judgment "amounted to a rubber stamp of the Master's findings," because the transcript of the Master's proceedings was obtained by his counsel and was not a part of the court file, no portions of the transcript were appended to the Master's Report, and none were referenced in the judgment.

■■■■ "Masters are appointed to 'aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause.'" *S.K.B. v. J.C.B.,* 867 S.W.2d 651, 658 (Mo.App.1993). A court cannot delegate or abdicate, in whole or in part, its judicial power. *Id.* The trial court must examine and consider the evidence for itself and determine whether the law and the facts of the case justify entry of the judgment recommended by the master. *Id.* Under Rule 68.01(g)(3), the trial court "may adopt the report or may modify it or reject it in whole or in part or may receive further evidence or may recommit it with instructions."

In September of 1999, the trial court issued an order appointing a Master, pursuant to Rule 68.01, "to aid the parties in implementing the Court Order dated August 5, 1999, and to aid the parties in reaching a finalized order." The Master

held an evidentiary hearing in December of 1999 and filed his report in April of 2000. The trial court's judgment and amended judgment substantially adopted the Master's report. It is apparent in the judgments, however, that the trial court reviewed the law and facts of the case in reaching its conclusions. Paul argues that the trial court issued its judgments without viewing the transcripts or exhibits and that portions of the transcript were not referenced in the judgment. This is simply not the case. The judgments identify portions of the hearing transcript in several of its findings of facts and also references evidence produced in the hearing in its findings of facts and conclusions of law. As Paul can show no evidence of his allegations, this point is denied.

### Conclusion

The judgment is in all respects to be affirmed except for the portion pertaining to paragraph 24 of the conclusions and the judgment language pertaining to the release and indemnification of the litigants. The judgment is reversed and remanded for action by the trial court pursuant to this opinion.

All concur.