Ursula **LEDINER**, Wolfgang Lediner and Patty Lediner, Plaintiffs–Respondents,

v.

Robert **HARRIS** and Loretta Harris, Defendants–Appellants.

No. 25983.

Missouri Court of Appeals, Southern District, Division One.

Oct. 4, 2004.

Jacob Y. Garrett, Garrett & Silvey, West Plains, MO, for Appellants.

C. Bradley Tuck, Tuck & Lukachick, P.C., Springfield, MO, W. Price Harned, Mountain Home, AR, for Respondents.

JAMES K. PREWITT, Judge.

Robert and Loretta Harris appeal from a November 14, 2003 amended judgment in which the trial court indicated that a particular easement would be "further described, as per the 'Master's Report'; . . . .

[s]pecifically, [that] the North portion of the easement is to be 32 feet [from] the base of the rock wall as extended until the West line of the easement joins the Lediner property." The appeal stems from case numbered CV300–158CC. The Harrises raise one point in this appeal and assert trial court error because the amended judgment is not supported by substantial evidence.

The history of this case is rather long and overlaps somewhat with a previous case also heard in Ozark County between the same parties (CV394–59CC). In a letter contained in the legal file for this case, the Lediners' attorney describes the case as "a highly charged emotional epic." We outline the pertinent details below.

On August 16, 2000, an amended judgment was filed in case number CV394–59CC in Ozark County that purported to resolve a property dispute between the Lediner and Harris families. According to that amended judgment, it was determined that the Lediners had established ownership by adverse possession to a portion of property to which the Harrises held title and the Lediners also were "awarded a prescriptive easement for ingress and egress over and across an existing driveway and twenty [feet] in width with said twenty feet centered over the existing roadway[.]"

On September 12, 2000, the Lediners ("Respondents") filed a quiet title action (CV300–158CC) against the Harrises ("Appellants") seeking to quiet title to 0.14 acres of land to which Respondents asserted they should be awarded ownership by adverse possession, but that in the previous court case (CV394–59CC), the court had made a finding that "there was no evidence that anyone possessed that property [the 0.14 acres at issue] below the line of the rock wall[.]" On that same day, Respondents also filed an application for a

temporary restraining order (TRO) and preliminary injunction, and the TRO was issued on September 14, 2000, under which Appellants were "enjoined from occupying the subject real property ... and interfering with [Respondent's] prescriptive easement over said tract."

On September 25, 2000, Appellants filed a motion to dismiss Respondents' petition for quiet title and a motion to quash the TRO. Within their motion to dismiss, Appellants questioned Respondents' statement in their petition to quiet title that the trial court in the amended judgment in the previous proceedings (CV394–59CC) had rendered a finding that indicated there was no evidence that anyone possessed the 0.14 acres at issue. Instead, Appellants noted that the amended judgment ordered that "all remaining boundaries shall be as referenced in the survey of Ralph Riggs with titles to all properties being 'quieted' pursuant to said survey, except as reflected in paragraphs numbered 3 and 4 above." Therefore, according to Appellants, the issue was res judicata.

On October 4, 2000, the trial court issued a memorandum sustaining Appellants' motion to dismiss, agreeing that title was quieted in the CV394–59CC case and therefore, the issue was res judicata. The court also indicated that argument on Appellants' motion to quash the TRO would be heard at a later date. On October 19, 2000, Appellants filed a motion for change of judge, and the Missouri Supreme Court appointed a new judge on January 17, 2001.

On December 6, 2000, there was activity related to the previous proceedings (CV394–59CC). A judgment nunc pro tunc was entered in that case purporting to correct legal descriptions to the extent that the judgment now specified ownership areas in relation to the rock wall indicated in Respondents' petition to quiet title in CV300–158CC. In particular, within the nunc pro tunc judgment it was stated that "[t]he title to the land north and east of the 'rock fence' shall vest in [Respondents], Richard Lediner and Ursula Lediner, and Wolfang Lediner and Patty Lediner .... [and][t]hat [the] part south and west of the 'rock fence' shall vest in [Appellants], Robert Harris and Loretta Harris."

Returning to activities under the case numbered CV300–158CC, on February 9, 2001, Appellants filed a motion to file a counterclaim and on that same day filed a counterclaim for damages, assault, and punitive damages. Respondents filed their reply to the counterclaim on March 13, 2001.

On February 6, 2002, the trial court in CV300–158CC entered a judgment via a docket entry that, although the docket entry itself is not completely readable, according to a letter written by Respondents' attorney to the court, indicated that the judgment nunc pro tunc entered on December 6, 2000 in CV394–59CC was to be amended to reflect a change in the length of the prescriptive easement awarded to Respondents from 20 feet to 30 feet. The docket entry does appear to say, "The judgment by stipulation and amendment is modified as follows: 30 feet to be substituted for 20 feet."

The next activity of note in CV300–158CC was on March 5, 2003, when the trial court, by stipulation and agreement, entered judgment based on a compromise settlement agreement between the parties. Among the provisions of the settlement that were incorporated into the judgment was that Appellants were to "execute a deeded easement granting a right of ingress and egress to [Respondents] on the disputed property" and that the "easement shall commence at the existing rock wall and extend out thirty-two feet (32') from

the edge of the rock wall along said proposed easement." Respondents also agreed to relocate their mailbox to somewhere on their property, but not on the easement described above.

On March 14, 2003, Appellants filed a motion for contempt and/or to enforce the settlement. Appellants claimed that Respondents were not acting in accordance with the settlement and order of the court, specifically that Appellants had twice began to build a fence outside of the easement, but Respondents removed the fence posts each time.

On March 24, 2003, Respondents filed a motion for contempt of court and to amend judgment. Respondents claimed that Appellants had "trespassed onto the subject tract and bulldozed and otherwise destroyed the character of the prescriptive easement awarded to [Respondents]." In addition to asking for damages related to the alleged contempt of court, Respondents asked the court to amend the judgment "to specifically prescribe acceptable conduct and to proscribe unacceptable conduct of the parties."

On May, 7, 2003, by agreement of counsel, the trial court appointed Senior Judge Jack Edwards ("Master") as a Special Master with "power to hire survey and set stakes and file report to the court[.]" The court further ordered "Master to interpret decree and set boundary lines for easement along [with] diagram or survey." On October 15, 2003, Master filed his report.

Within the report, Master indicated that he used the rock wall as a reference point and that "[o]n the north end of the easement the rock wall ceased to exist and [he] . . . projected the natural extension of the rock wall and measured 32 feet from that point." From there, he placed stakes "in the ground to indicate the western boundary of the easement from a point where the easement joins the county road on the south to where the easement joins [Respondents'] land to the north." Master also identified the place where Respondents' mailbox should be relocated, noting that it should be placed in its "original location." Master concluded his report by suggesting that the description shown in the compromise settlement be modified "to include words to the effect that the north portion of the easement is to be 32 feet form the base of the rock wall as extended, until the west line of the easement joins [Respondents'] property."

A docket entry dated November 5, 2003, indicated that the court intended to enter judgment in line with Master's report. On November 14, 2003, the trial court entered an amended judgment in CV300–158CC incorporating Master's report and describing the easement by using "all reference points and stakes which were laid out by the Master. Specifically, the North portion of the easement is to be 32 feet [from] the base of the rock wall as extended, until the West line of the easement joins [Respondents'] property."

On November 17, 2003, Respondents filed a motion to stay implementation of the report and for a restraining order. Within the motion, Respondents stated that since the date of Master's report, "there has arisen a dispute as to the relative rights of the parties regarding property located north and east of the rock wall as well as other surrounding property."

Appellants filed an objection to Master's report on November 19, 2003. Appellants noted that although Master "believed" he was marking the location of the boundaries in accordance with the stipulation, "the stipulation specifically provided that on the North boundary of the easement a 'post' would be placed 32′ from the rock wall on the property boundary . . . . [and that] [a] boundary marker was placed at or near

the North boundary but its location is approximately 44' from the rock wall and is thus not in accordance with the stipulation between the parties." In addition, according to Appellants, although Respondents' mailbox was not to be located on Appellants' property, Master "mistakenly identified a tree which he believed to be the location where the mailbox was previously located, however, said location is not where the mailbox was previously and is on property belonging to [Appellants]." Appellants indicated that although they did not believe the remaining markers placed by Master were in accordance with the stipulation, they were "willing to consent to their location upon removal of the mailbox to a position not on the property of [Appellants] and a relocation of the post marker on the North boundary."

On December 3, 2003, the trial court overruled Respondents' motion to stay and denied Appellants' objection to Master's report. This appeal followed.

Appellants raise one point relied on and in it state that the trial court erred in entering the November 14, 2003, amended judgment. According to Appellants, the amended judgment is not supported by substantial evidence because no evidence was ever presented to the trial court other than the March 5, 2003, compromise settlement agreement between the parties and that agreement is not in accordance with either the amended judgment or Master's report. Appellants ask that we reverse the trial court's decision and remand to the trial court for presentation of additional evidence.

We first note that there are no issues raised regarding Rule 75.01 and the December 6, 2000 judgment nunc pro tunc in the case numbered CV394–59CC and the February 6, 2002, docket entry in the case numbered CV300–158CC further modifying the judgment in that case; the continu-

ation of the case numbered CV300–158CC following the trial court's action sustaining Appellants' motion to dismiss on res judicata grounds; and Rule 68.01 and any apparent failure of the trial court to hold a hearing on Appellants' objection to Master's report.

The only case law on which Appellants rely in their argument is the general standard of review as stated in *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976). Under this standard of review, this Court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32.

No other citation to authority is given. When an appellant fails to support contentions with relevant citations to authority or to provide rationale explaining why such authority is unavailable, we have discretion under Rule 84.04 to consider the point abandoned. *Luft v. Schoenhoff,* 935 S.W.2d 685, 687 (Mo.App.1996). However, we use our discretion here to address the point on its merits.

Pursuant to Rule 68.01(a), a circuit court has the authority to appoint a master. Further, the court "may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts[.]" Rule 68.01(e). Subject to those specifications and limitations outlined by the court, "the master has and shall exercise the power ... to do all acts and take all measures necessary or proper for the efficient performance of the duties under the order." *Id.*

As for the trial court, it may not delegate or abdicate any of its judicial powers. *D'Agostino v. D'Agostino,* 54 S.W.3d 191, 200 (Mo.App.2001). The court

must examine and consider the evidence for itself to determine whether the law and the facts justify entry of a judgment in accordance with the master's recommendation. *Id.* It is within the trial court's discretion to adopt, modify, or reject, all or any part of the master's report. *Id.* The court may also receive further evidence or recommit the report with instructions. *Id.*

We find no evidence that Master failed to act within his given powers and limitations or that the trial court failed in any of its requirements with respect to the use of a special master and his or her report. The March 5, 2003 compromise settlement indicated that the "easement shall commence at the existing rock wall and extend out thirty-two feet (32') from the edge of the rock wall along said proposed easement." In his report, Master indicated that "[o]n the north end of the easement the rock wall ceased to exist and in that circumstance [he] projected the natural extension of the rock wall and measured 32 feet from that point."

Within their objection to Master's report, Appellants note that the "stipulation specifically provided that on the North boundary on the easement a 'post' would be placed 32' from the rock wall on the property boundary .... [and that] [a] boundary marker was placed at or near the North boundary but its location is approximately 44' from the rock wall[.]" The only reference we find to a "post" in the agreement is that Respondents agreed to "replace the previously existing six inch (6") corner posts by replacing them at the ends of the easement thirty-two feet (32') from the existing rock wall."

The agreement did also specify that Respondents' mailbox was to be placed on Respondents' property, not including the easement, and Master indicated that he marked the location in its original location and that the location met the stipulations.

Appellants in their objection to Master's report argue that the mailbox is on their property.

Given the circumstances of this case, and since it was for the trial court to decide whether to accept, modify, or reject Master's report, we cannot find that the trial court erred in entering its November 14, 2003, amended judgment incorporating the Master's report. The trial court was under no obligation to hear additional evidence from the parties. *See D'Agostino,* 54 S.W.3d at 200.

The trial court's judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.