In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

CARMED 45, LLC, ) No. ED108990
 )
 Respondent, ) Appeal from the Circuit Court
 ) of St. Louis County
v. ) Cause No. 17SL-CC00702
 )
WESLEY ADAM HUFF, ) Honorable Ellen H. Ribaudo
 )
 Appellant. ) Filed: July 13, 2021

 Introduction

 Wesley Huff (Huff) appeals the trial court’s entry of default judgment as a sanction

for discovery violations 1 and subsequent award of liquidated damages granted to Carmed

45, LLC (Carmed 45) on Carmed 45’s suit for breach of a covenant not to compete. Huff

also appeals the trial court’s entry of an injunction extending the non-compete period two

years from the date of the judgment. Because we find no abuse of discretion in light of the

whole record regarding the trial court’s imposition of sanctions, we affirm the court’s

judgment in that respect. However, because the record lacks evidence of actual or ongoing

1
 The trial court’s order stated that it both struck Huff’s pleadings and entered default judgment as sanctions
for Huff’s discovery violations. However, Huff had not yet filed any responsive pleading in this case, so we
focus our discussion on the trial court’s entry of default judgment as a sanction for discovery violations
pursuant to Rule 61.01.
harm to Carmed 45 resulting from Huff’s breach, we reverse the trial court’s liquidated

damages award and injunction extending the non-compete period.

 Background

 Carmed 45 is a business in the auto repair service industry whose services include

paintless dent repair (PDR). In 2010, Huff, as agent of his company, Mirror Finish PDR,

entered a partnership agreement with Carmed 45 that contemplated Huff would perform

PDR in a designated territory in southern Illinois (the Operations Area). When Huff joined

the partnership, Carmed 45 provided Huff with a variety of confidential business

development and marketing resources, intellectual property related to PDR, pricing and

customer data, and financial information.

 The partnership agreement included a non-compete, non-disclosure, and non-

solicitation provision (non-compete clause), which prohibited Huff 2 from providing PDR

services within a 50-mile radius of the Operations Area for 24 months after leaving the

partnership. Additionally, the non-compete clause provided that if Huff breached the

clause, the non-compete period would be extended by the amount of time Huff was in

breach. The clause also included a liquidated damages provision, to be calculated as an

“amount equal to the previous two (2) years [’] adjusted net income before interest and

taxes derived by [Carmed 45] plus any salary paid [to Huff] during such period.”

2
 Huff argues that the non-compete clause does not apply to him individually because he entered the
partnership agreement only as agent of his company, Mirror Finish PDR. However, the non-compete clause
states that it “applies to Managing Partner [Mirror Finish PDR] and to each of the individuals owning,
organizing or otherwise involved with the Managing Partner whose signatures shall appear separately at the
end of this Agreement, all of which together with Managing Partner are collectively in this Section [] referred
to as ‘Managing Partner.’” Additionally, in March of 2013, Huff signed an amendment to the partnership
agreement stating, “In the event [] that any Member is an Organization the term ‘Member’ shall be deemed
to include each individual whose signature appears next to the name of such Member on the signature page
attached hereto.” Thus, the relevant provisions of the partnership agreement bind Huff as an individual.
Mirror Finish PDR was not a party to the lawsuit. We therefore discuss Huff individually as it relates to the
agreement throughout this opinion.

 2
 On March 31, 2015, Huff resigned his membership in the partnership. On February

22, 2017, Carmed 45 filed suit for breach of contract, alleging that Carmed 45 had

discovered Huff was performing PDR services in the Operations Area in violation of the

non-compete clause. On November 9, 2017, Carmed 45 served its first set of

interrogatories, requests for admission, and requests for production.

 Huff requested an extension of time to respond from Carmed 45, and then on the

new due date, Huff filed a motion with the trial court to stay discovery or grant an extension

of time to complete discovery until the court ruled on Huff’s motion to dismiss for failure

to state a claim, which Huff filed the same day. Huff argued Carmed 45 requested highly

sensitive, confidential, and proprietary information, which would be detrimental to his

business if he had to disclose, and asked the court to rule on the enforceability of the non-

compete clause prior to Huff producing any discovery. Carmed 45 responded that it had

already agreed to Huff’s initial request for an extension of time to respond to discovery and

asked the court to deem admitted Carmed 45’s requests for admission.

 On January 22, 2018, the trial court granted Carmed 45 leave to file an amended

petition and denied Huff’s motion to stay discovery. The court also granted Huff an

additional 14 days to respond to Carmed 45’s discovery requests. The trial court chose not

to deem Carmed 45’s requests admitted, but appointed a special master to oversee

discovery, finding that the issues to be litigated were complicated, that the parties had had

difficulty completing discovery in an orderly and timely manner, and that such exceptional

circumstances warranted referral to a special master to ensure the orderly completion of

discovery.

 3
 Over the following months, the parties conferred with the special master, and

served discovery requests, objections, and responses. After a lengthy hearing before the

special master, the master drafted an order, later adopted by the trial court, finding that a

protective order was the appropriate means to address Huff’s concerns regarding the

propriety information he objected to producing. The special master attached a protective

order, also entered by the court, which laid out parameters for designating documents either

as “confidential” or as “for attorneys’ eyes only,” depending on each document’s date. 3

Finally, the special master considered Huff’s objections to each of Carmed 45’s discovery

requests and determined Huff must fully respond to seven interrogatories, 44 requests for

production, and three requests for admission. The trial court’s July 18, 2018 order,

adopting the special master’s orders, required Huff to fully respond to discovery within 30

days.

 On August 17, 2018, Huff filed a supplemental response, which answered the three

requests for admission but contained no responses to the interrogatories or requests for

production. He also filed a motion to bifurcate the proceedings and a motion to amend the

protective order, again asserting that these discovery requests sought highly proprietary

information that would be detrimental to his business to disclose, and arguing that the trial

court should rule on the enforceability of the non-compete clause before requiring

disclosure of such information. On September 5, 2018, Carmed 45 filed a motion for

sanctions due to discovery violations.

3
 Documents concerning transactions taking place prior to the expiration of the original non-compete period,
March 31, 2017, were to be designated “confidential,” and all documents concerning transactions after that
date could be designated “for attorneys’ eyes only.”

 4
 The trial court held a hearing on October 31, 2018, after which it denied Huff’s

motion to bifurcate the proceedings and granted Carmed 45’s motion for sanctions, finding

that Huff’s conduct during discovery was a “willful and wanton” attempt to avoid

disclosing information that both the special master and the court found was discoverable

pursuant to the protective order. The trial court ordered Huff to pay the full cost of the

special master and Carmed 45’s attorney fees expended in prosecuting the motion for

sanctions. The court additionally stated it would consider default judgment as a future

sanction if Huff did not provide discovery within 10 days of its December 28, 2019 order.

 Huff filed an emergency motion to extend time for discovery and file responses

under seal, and a motion to vacate the order of reference to a special master and the

discovery-related orders that the court had adopted from the special master. Huff also

requested a protective order under Rule 56.01(c)(7) and again sought to bifurcate the

proceedings. Huff filed petitions for writs of prohibition and mandamus with this Court

and the Missouri Supreme Court on January 4 and 7, 2019, respectively. The petitions

challenged the trial court’s appointment of the special master, the special master’s

discovery orders, the trial court’s award of sanctions, and the trial court’s denial of

bifurcated proceedings. Both courts issued orders denying all writs.

 On January 17, 2019, Huff produced over 6,000 pages of documents to Carmed 45,

consisting primarily of customer invoices and payments since Huff left the partnership, all

of which he designated “for attorneys’ eyes only.” Huff simultaneously filed a renewed

motion to amend the protective order, requesting the trial court allow him to designate all

such information as “for attorneys’ eyes only.”

 5
 On January 20, 2019, Carmed 45 filed its second motion for sanctions, arguing that

Huff was still in violation of the special master’s and the trial court’s discovery orders,

both by improperly designating several documents as “for attorneys’ eyes only” and by

failing to produce requested documents. After a hearing, the trial court denied Huff’s

request to amend the protective order and took the motion for sanctions under submission.

On December 27, 2019, the trial court granted Carmed 45’s second motion for sanctions.

The court found that Huff “continue[s] to object and file Motions to reconsider which have

been denied and yet [Huff] has failed to produce the discovery subject to a protective order

or otherwise.” The court found Huff’s actions to be willful and wanton, and entered default

judgment on behalf of Carmed 45.

 The trial court held a damages hearing on February 13, 2020, at which Huff’s

counsel was present but could not present evidence or cross-examine witnesses. The trial

court did allow Huff’s counsel to make objections during the hearing. Carmed 45 presented

documentary and testimonial evidence about the operating agreement, non-compete clause,

and calculation of liquidated damages. Carmed 45’s attorney, Shaun Broeker, testified

regarding documents designated “for attorneys’ eyes only” over Huff’s objection.

 The trial court awarded $322,933.83 in liquidated damages to Carmed 45 for Huff’s

breach of the non-compete clause, $90,138.35 in pre-judgment interest, $20,453.20 in costs

and attorneys’ fees for the costs of the special master and litigating the sanctions motions,

and $275,872.60 in costs and attorneys’ fees under the terms of the operating agreement.

The trial court found the non-compete clause’s terms were reasonable and entered an

injunction extending the non-compete period two years from the date of the judgment

because Huff never complied with the original term. This appeal follows.

 6
 Discussion

 Huff raises several arguments on appeal. His first four points raise procedural error

concerning Carmed 45’s petition and the proceedings involving the special master. Huff’s

fifth and sixth points claim the trial court erred in imposing discovery sanctions. Huff’s

seventh and eighth points address the damages hearing, arguing the trial court erred both

in limiting his participation at the hearing and in allowing Carmed 45’s attorney to testify.

Huff’s remaining points concern the underlying merits, asserting that the non-compete

clause is unenforceable, the liquidated damages clause was unenforceable in light of the

lack of evidence of actual harm to Carmed 45, and the injunction extending the non-

compete period was improper. We address each in turn. 4

 Points I and II

 In Points I and II, Huff argues the trial court erred in denying Huff’s motion to

dismiss and entering judgment on Carmed 45’s second amended petition, respectively,

after Carmed 45 had filed a third amended petition, which the trial court later struck. Huff

argues that upon filing the third amended petition, the second amended petition became a

nullity, thus Carmed 45 had no pending claims upon which the trial court could enter

judgment. Under the circumstances here, we disagree.

 Carmed 45 requested leave to file a third amended petition and attached the

proposed petition to its motion. The court granted leave, but the third amended petition

Carmed 45 later filed was not the same as that attached to Carmed 45’s motion. Huff

therefore filed a motion to strike the third amended petition, which the trial court granted.

4
 Huff argues in a twelfth point that the trial court erred in denying his motion to dismiss Carmed 45’s claim
against Huff individually because he was not a party to the non-compete clause. Based on the language of
the non-compete clause, discussed supra, note 2, we find no trial court error in this respect. Point denied.

 7
 The general rule is that an amended pleading “abandons any prior pleadings not

referred to or incorporated into the new pleading.” Hawk Isolutions Group, Inc. v. Morris,

288 S.W.3d 758, 762 (Mo. App. E.D. 2009). However, the underlying assumption of this

longstanding rule is that the amended pleading must be properly pled and accepted by the

court. See Ingwerson v. Chicago & A. Ry. Co., 103 S.W. 1143, 1145 (Mo. 1907) (“As

long as the amended statement is recognized by the court it stands in lieu of the original

statement”); see also Saslow Dental-St. Louis v. William H. Jones, D.D.S., 751 S.W.2d

396, 397-98 (Mo. App. E.D. 1988) (unsigned and unserved amended petition was defective

and did not operate to abandon former petition). Such was not the case with Carmed 45’s

third amended petition.

 Under Rule 55.33(a), Carmed 45 had to obtain leave to file its third amended

petition. However, Carmed 45 did not have leave to file the petition it ultimately submitted

to the court, and the court did not recognize or accept that petition. 5 Carmed 45’s

improperly filed pleading therefore did not result in the abandonment of Carmed 45’s

second amended petition. The trial court did not err in relying on the second amended

petition as the pleading in effect for the remainder of the proceedings. Points denied.

 Points III and IV

 Huff’s third and fourth points challenge the proceedings related to the special

master the trial court appointed to oversee discovery. In Point III, Huff argues the trial

court erred in entering the order of reference to the special master because the court did not

follow the procedure for doing so laid out in Rule 68.01, and the proceedings before the

5
 The fact that the court clerk accepted the third amended petition as filed here does not affect our conclusion.
See Houck by Houck v. Morrow, 786 S.W.2d 604, 606-07 (Mo. App. S.D. 1990) (fact that court clerk
received fifth amended petition after expiration of 30-day period granted by court for filing such petition did
not waive requirement of timeliness).

 8
special master also violated Rule 68.01. In Point IV, Huff argues the trial court erred in

adopting the orders of the special master because of such deficiencies in the procedure

under Rule 68.01. Under the circumstances here, we disagree.

 The appointment of a special master under Rule 68.01 is discretionary, and we

review it for an abuse of discretion. Legacy Homes P’ship v. Gen. Elec. Capital Corp., 50

S.W.3d 346, 354 (Mo. App. E.D. 2001). In appointing a special master, trial courts may

not delegate or abdicate their judicial power. Country Club of the Ozarks, LLC v. CCO

Inv., LLC, 338 S.W.3d 325, 328 (Mo. App. S.D. 2011). The court has discretion to “adopt,

modify, or reject, all or any part of the master’s report.” Id. On appeal, we review the

decision of the trial court, not the findings and recommendations of the master. Id. We

will affirm the trial court’s decision unless there is no substantial evidence to support it, it

is against the weight of the evidence, or the decision erroneously declares or applies the

law. Id. (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)).

 First, Huff argues no evidence supported the trial court’s decision to appoint a

special master. Rule 68.01(b), in relevant part, requires “a showing that some exceptional

condition requires” reference to a special master.

 Here, the trial court found “the issues to be litigated are complicated and the parties

have had difficulty completing discovery in an orderly and timely manner.” The court had

conducted a hearing where it heard Huff’s arguments that Carmed 45’s lawsuit was

frivolous, failed to allege a factual basis for liability, and sought highly sensitive and

confidential information beyond the scope of any underlying claim; as well as Carmed 45’s

response that its discovery requests were confined to discovering alleged violations of the

non-compete clause. Carmed 45 had already requested the sanction of deeming its requests

 9
for admission to be admitted, 6 pointing out that after one extension, Huff filed the motions

at issue rather than any objections to the discovery requests or any request for a protective

order. 7 The trial court was dealing with parties who were former business partners and had

between them a wealth of proprietary information potentially at stake, Huff was resisting

disclosing any information at all, and it was apparent to the trial court the parties would not

be able to cooperate to accomplish discovery even in the case’s infancy. The trial court’s

finding that exceptional circumstances required the appointment of a special master to

oversee discovery was not an abuse of discretion here.

 Next, Huff claims that the order of reference was void because it imposed

restrictions contrary to Rule 68.01. We note that “the procedure mandated by Rule

68.01(g) seeks to guarantee the parties due process when the circuit court appoints a special

master.” Hoffman v. Hoffman, 292 S.W.3d 436, 438 (Mo. App. E.D. 2009). We have

found no Missouri court that has ever reversed based on the language in the order of

reference to a special master; rather, courts examine the actions of the special master and

the trial court. Our concern here is whether the trial court, with the aid of the special master,

ultimately resolved the issues between the parties in a manner that upheld due process.

Thus, we turn to examine the procedure before the special master and the trial court here.

 Huff argues several violations of Rule 68.01 took place. First, he argues the special

master failed to follow Rule 68.01(d), which states, “Before proceeding to hear any

testimony in the action, a master shall take and subscribe an oath . . . .” The plain meaning

6
 Rule 61.01(c) states, “If a party . . . fails to serve answers or objections [to a request for admissions], . . .
the truth of any relevant and material matters of fact contained in the request for admissions shall be taken as
admitted.”
7
 Rule 61.01(a) states, “Any failure to act described in this Rule 61 may not be excused on the ground that
the discovery sought is objectionable unless the party failing to act has served timely objections to the
discovery request or has applied for a protective order as provided by Rule 56.01(c).”

 10
of the rule requires a special master to take an oath in every case. McGuire v. Lindsay,

496 S.W.3d 599, 605-06 (Mo. App. E.D. 2016) (noting “‘before’ indicates when the oath

must be taken, not if the oath need be taken”). Where a special master does not take an

oath and the parties do not waive the requirement, it is error for the trial court to adopt the

special master’s report. Id. at 605 (quoting R.J. v. S.L.J., 732 S.W.2d 574, 577 (Mo. App.

E.D. 1987)). However, a party may waive an objection due to a violation of Rule 68.01(d)

if the party does not timely raise it during proceedings with the special master or before the

trial court. See In re Marriage of Gardner, 973 S.W.2d 116, 121-22 (Mo. App. S.D. 1998).

 Here, the special master did not take an oath at any time. However, Huff objects to

this failure for the first time on appeal. Huff participated in the proceedings before the

special master and the trial court and raised several of the same objections to the

proceedings involving the special master that he raises here, yet he did not object based on

failure to take an oath. We find under the circumstances that Huff has waived this claim. 8

See Gardner, 973 S.W.2d at 121-22 (party who failed to object during hearing before

special master, file objection in trial court during eight-month interval between master’s

hearing and trial court’s hearing on master’s report, or object during trial court’s hearing,

despite raising numerous objections to master’s report, waived Rule 68.01(d) violation).

 Next, Huff argues that the special master and trial court failed to follow Rule

68.01(g), which requires a special master to prepare a report for the trial court and allows

the parties 30 days in which to file objections to the report before the trial court determines

whether to adopt, modify, or reject the report. Here, the special master filed three orders:

8
 Moreover, this deficiency is one that the trial court could easily have corrected at any time, given that the
special master did not hear any testimony in this case. See McGuire, 496 S.W.3d at 605 (finding no error
where trial court administered oath to special master upon party’s objection to special master’s report based
on failure to take oath, when special master had not heard any testimony).

 11
one addressing Huff’s specific discovery objections, one addressing a motion for protective

order Huff presented to the special master, and a protective order detailing how discovery

may be disclosed using the designations of “confidential” or “for attorneys’ eyes only”

where appropriate. The trial court adopted all three orders within two days of receiving

them from the special master. 9

 Huff is correct that these proceedings do not conform to Rule 68.01(g). However,

we do not find that the trial court’s technical violations of the rule amount to a violation of

Huff’s due process rights under the circumstances here. See Hoffman, 292 S.W.3d at 438

(noting procedure mandated by Rule 68.01 seeks to guarantee parties’ due process rights).

The essence of due process guarantees notice and an opportunity to be heard, and in this

context, “a reasonable time in which to challenge the [special master]’s findings before a

circuit judge.” Id. While there was no “report” filed by the special master, followed by a

30-day period during which Huff could file any objections with the trial court, Huff did

have an opportunity to be heard regarding his objections both before the special master and

the trial court. Huff participated in a hearing before the special master to address objections

to discovery. The special master then requested briefing on the remaining objections and

proposed protective orders. Huff sent a brief in which he further presented his objections

and legal arguments regarding discovery, along with his request for a bifurcated discovery

process. The special master’s order denied Huff’s objections to production of discovery

and found that the attached protective order would address Huff’s concerns.

 Though the trial court adopted these orders within a few days, 30 days after the trial

court’s entry of the special master’s orders, Huff filed an additional motion with the trial

9
 The special master dated only the order addressing specific discovery objections, and it lists an entry date
of July 16, 2018. The trial court adopted all three orders on July 18, 2018.

 12
court to bifurcate discovery and to amend the protective order, asserting the same

arguments he had briefed for the special master. 10 Huff further requested an extension of

time to comply with the special master’s discovery order, then adopted by the court. None

of these motions asserted that the special master or the trial court failed to follow Rule

68.01(g). The trial court later held a hearing on Huff’s motions and took them under

submission, eventually denying the motion to bifurcate discovery and ordering Huff to

complete discovery within 10 days. Huff thereafter filed a motion to reconsider, again

advancing the same arguments, which the court heard at a hearing on January 24, 2019 and

denied the same day.

 Given the particular circumstances of this case, we do not find the trial court

violated Huff’s due process rights based on any failure to follow the procedure in Rule

68.01 meant to protect Huff’s due process rights. Huff does not point to any instance in

which he was prohibited from filing objections to the decisions of the special master or

having them heard by the court, before or after a 30-day period as contemplated in Rule

68.01(g). Moreover, Huff did not raise any failure to follow Rule 68.01 until Jan 5, 2019,

following the trial court’s first grant of sanctions, which was six months after the trial

court’s entry of the special master’s orders. Rather, Huff’s motions to the trial court

immediately following the trial court’s adoption of the special master’s orders

acknowledged Huff’s obligation to comply with the court’s July 18, 2018 order to complete

discovery, and Huff then timely supplemented his answers to requests for admissions

following that order. The court heard and ruled upon all of his arguments regarding a

bifurcated trial process and a more stringent protective order, on multiple occasions. Thus,

10
 Huff’s motion specifically notes he “submitted the position and arguments set forth herein (in substantially
the same form) . . . to [the special master].”

 13
the court’s and special master’s failure to follow Rule 68.01 in this respect does not

constitute reversible error. 11

 Huff further argues the special master failed to obtain and file a transcript of the

hearing before the special master and file it with the trial court. However, Rule 68.01 states

only that the special master must file “a transcript of the proceedings including the evidence

and exhibits, if any.” Rule 68.01(g)(1) (emphasis added). Such filings are not required in

every case under the plain language of the rule.

 Finally, Huff argues that the special master’s failure to provide the court any record

of the proceedings before the special master prevented meaningful review of the special

master’s orders and constituted an improper delegation of duties by the trial court. Huff

relies on cases that note the trial court has the obligation to examine the evidence for itself

to determine whether the law and the facts of the case justify the special master’s findings.

See Prof’l Fire Fighters of E. Mo. v. City of Univ. City, 457 S.W.3d 23, 28-29 (Mo. App.

E.D. 2014); Hoffman, 292 S.W.3d at 439; S.K.B. v. J.C.B., 867 S.W.2d 651, 658-59 (Mo.

App. W.D. 1993). However, in each of these cases, the special master essentially

adjudicated the case, and the trial court subsequently adopted such adjudication with no

independent assessment of the issues. See Prof’l Fire Fighters, 457 S.W.3d at 28-29 (trial

court adopted factual findings of special master’s report but changed legal conclusion

without evidentiary review or explanation, and subsequently dismissed relator’s writ

petition); Hoffman, 292 S.W.3d at 439 (special master resolved parties’ issues regarding

property division after dissolution, did not file report, and trial court then entered judgment

11
 Huff also argues that the order of reference to a special master improperly stated that the court would reject
the special master’s decisions only if they were clearly erroneous. Even if this was improper, we see no
evidence in the record that the trial court applied such a standard in reviewing the special master’s orders.

 14
“per the special master”; record contained nothing revealing basis for special master’s

recommendations or trial court’s consideration thereof); S.K.B., 867 S.W.2d at 658-59

(special master had decided case’s sole issue, determining sufficient change in

circumstances warranted modification of child custody; there was no record of proceedings

before special master and no guardian to represent child’s interest; trial court adopted report

almost without change); see also Transit Cas. Co. in Receivership v. Certain Underwriters

at Lloyd’s of London, 995 S.W.2d 32 (Mo. App. W.D. 1999) (party appealed from order

of special master never reviewed by trial court; court of appeals had no jurisdiction as order

of special master acting beyond his power was legal nullity).

 Here, unlike in the cases cited by Huff, the trial court referred only the issues

surrounding discovery to the special master and reserved adjudication of the claims

between the parties for the court’s determination. Further, the trial court reviewed all of

the discovery issues resolved by the special master through the court’s consideration of

Huff’s motions, and the trial court conducted multiple hearings during which it entertained

Huff’s arguments regarding the special master’s discovery orders as well as issues

regarding the scope of discovery and the protective order, despite the fact that Huff failed

to timely raise many of his arguments regarding Rule 68.01 procedures. The trial court

ultimately resolved each of these issues, and it did not improperly delegate or abdicate its

judicial power. See Country Club of the Ozarks, 338 S.W.3d at 328. Points denied.

 Points V and VI

 Huff argues that the trial court abused its discretion by imposing sanctions. Point

V addresses the trial court’s order of December 28, 2018 assigning the special master’s

fees and attorney’s fees as a sanction, and Point VI address the trial court’s entry of default

 15
judgment on December 27, 2019. Huff argues both orders failed to include necessary

findings based on evidence of legitimate discovery violations to justify such sanctions.12

We disagree.

 Trial courts have broad discretion in controlling discovery, which extends to the

choice of sanctions for non-disclosure during discovery. Wilkerson v. Prelutsky, 943

S.W.2d 643, 647-48 (Mo. banc 1997). We reverse only upon a showing that the trial court

abused that discretion by ruling in a manner that “is clearly against the logic of the

circumstances then before the court and is so arbitrary and unreasonable as to shock the

sense of justice and indicate a lack of careful consideration.” Lewellen v. Franklin, 441

S.W.3d 136, 149 (Mo. banc 2014) (internal quotation omitted). “Review is limited to

determining whether the trial court could have reasonably concluded as it did, not whether

the reviewing court would have imposed the same sanctions under the same

circumstances.” Davis v. Chatter, 270 S.W.3d 471, 476 (Mo. App. W.D. 2008) (internal

quotation omitted).

 Rule 61.01 lists the sanctions available to the trial court when faced with a party’s

failure to act regarding discovery. Subsection (a) states, “Any failure to act described in

this Rule 61 may not be excused on the ground that the discovery sought is objectionable

unless the party failing to act has served timely objections to the discovery request or has

applied for a protective order as provided by Rule 56.01(c).” The rule also authorizes an

order requiring the party failing to act to pay reasonable expenses and attorney’s fees, or

an order striking the pleadings and granting a default judgment. Rule 61.01(b)(1) (for

12
 Huff also argues in both points that the sanctions orders are based on improper proceedings and void orders
of the special master. As we have determined that Huff was not prejudiced by any procedural violations
surrounding the special master in our analysis of Points III and IV, supra, we do not address such arguments
again here.

 16
failure to answer interrogatories); 61.01(d)(2), (4) (for failure to produce documents). The

trial court should limit the sanctions imposed to what is required to accomplish the

purposes of discovery, and impose sanctions only where the party seeking sanctions has

been prejudiced by the other party’s failure to act. Dorsch v. Family Med., Inc., 159

S.W.3d 424, 439 (Mo. App. W.D. 2005). However, “[d]efault, though drastic, is

appropriate where the party has shown a contumacious and deliberate disregard for the

court’s authority.” Spacewalker, Inc. v. Am. Family Mut. Ins. Co., 954 S.W.2d 420, 423

(Mo. App. E.D. 1997).

 1. First Sanctions Order, December 28, 2018

 In its first sanctions order, the trial court found that Huff’s actions amounted to a

“continuing failure” to comply with the orders of the special master and of the trial court,

and that such failure was “willful and wanton.” The court ordered Huff to pay the full cost

of the special master and ordered Huff to pay Carmed 45’s attorney’s fees for prosecuting

the motion for sanctions. Huff argues this order failed to identify specific discovery

violations or how Carmed 45 was prejudiced. Under the circumstances, we find the trial

court did not abuse its discretion in entering this order.

 Huff resisted providing discovery beginning with Carmed 45’s first requests. He

received an initial extension of time from Carmed 45 to respond, and then, rather than filing

specific objections or a request for a protective order under Rule 56.01(c), Huff filed a

motion to stay discovery or for an extension of time, arguing that the requests were

overbroad and sought highly sensitive proprietary information. At that point, Rule 61.01(a)

 17
provided that Huff’s failures to respond may not be excused on the ground that the

discovery sought was objectionable. 13

 Rather than imposing any sanction at that point, the court referred the matter to the

special master, along with giving Huff 14 additional days to provide discovery. The special

master ruled on several of Huff’s specific objections to Carmed 45’s discovery requests,

including that they sought highly sensitive proprietary information, and found Huff must

fully answer seven interrogatories, 44 requests for production, and three requests for

admission, pursuant to the protective order, within 30 days. Though Huff then timely

answered the requests for admission, he also filed a motion for extension of time regarding

the other discovery requests, asserting the same objections and argument that he had

asserted to the special master and to the trial court initially in his first motion to stay

discovery.

 At that point, the trial court’s decision to deny Huff’s motions and grant a limited

sanction in the form of fees was reasonable here. The court had already granted Huff two

extensions of time to respond to discovery and had denied Carmed 45’s prior request to

deem requests for admissions to be admitted. The court had considered and rejected Huff’s

argument regarding the sensitivity of the information requested in Huff’s first motion to

stay, and again in the motion to bifurcate the proceedings and amend the protective order,

finding the protective order addressed Huff’s concerns. The special master had considered

and overruled the same objections. Huff had yet to comply with the court’s July 18, 2018

order to fully answer 44 requests for production and seven interrogatories. After hearing

13
 Missouri rules of discovery require a party to include any objections in their timely responses to discovery.
Rule 57.01(c)(3) (interrogatories) (“If the information is withheld because of an objection, then each reason
for the objection shall be stated”); 58.01(c)(3) (requests for production) (same); 59.01(d)(3) (“If an objection
is asserted, then each reason for the objection shall be stated”). Huff failed to timely respond.

 18
Huff’s arguments again, as well as argument on the motion for sanctions, the court

determined that Huff’s failures to produce requested documents and respond to

interrogatories was willful and wanton.

 Though the trial court’s sanctions order did not specify which discovery was

lacking, Huff had not answered any requests for production or interrogatories since the

court’s July 18, 2018 order, thus it was clear which discovery was still outstanding at that

point. Additionally, though the trial court did not make a written finding that Carmed 45

was prejudiced, it was evident from the record that Huff’s failures to produce evidence

regarding his business customers hindered Carmed 45’s ability to prosecute its breach of

contract claim regarding the non-compete clause. See Binder v. Thorne-Binder, 186

S.W.3d 864, 867 (Mo. App. W.D. 2006) (noting Rule 61.01 does not require court to make

written findings of prejudice).

 The trial court considered and chose to forego the sanction of default judgment,

instead limiting its sanction to a monetary penalty. The court further gave a 10-day

deadline designed to accomplish the purposes of discovery and move the case forward.

The trial court did not abuse its discretion in entering the first sanctions order. 14 See

14
 Huff further argues the trial court abused its discretion in imposing sanctions because the court failed to
enforce Local Rule 33.5, which requires parties to make a good faith effort to resolve the disputed issues
before the court entertains a motion for sanctions. He relies on two cases reversing sanctions orders for abuse
of discretion, but in both, the failure to follow Local Rule 33.5 was only one of many problems with the trial
court’s action. See Trotter v. Distler, 260 S.W.3d 913, 915 (Mo. App. E.D. 2008) (reversing sanction of
dismissal where unverified motion for sanctions did not allege prejudice or contumacious disregard for trial
court’s authority and trial court made no findings on either, motion did not certify compliance with Local
Rule 33.5, and sanction was excessive as party had cured discovery defect and only outstanding failure was
reimbursing moving party $330); Ballesteros v. Johnson, 812 S.W.2d 217, 223-24 (Mo. App. E.D. 1991)
(reversing sanction of default where court imposed sanctions at end of hearing where defendant’s attorney
was not present, and attorney’s firm received motion for sanctions and notice of hearing only 39 minutes
prior to start of hearing; this Court held trial court’s failure to enforce Local Rule 33.5 “contributed to the
unreasonableness of the notice”). Neither case is analogous to the situation here. Carmed 45 sent Huff a
good faith letter in February of 2018 outlining the deficiencies in Huff’s discovery responses. The special
master and the trial court then intervened and ordered specific responses. Carmed 45’s signed motion for
sanctions outlined the prejudice it had suffered and certified its good faith letter was an attempt to resolve the

 19
Soybean Merchandising Council v. AgBorn Genetics, LLC, 534 S.W.3d 822, 834 (Mo.

App. W.D. 2017) (finding court’s limitation of fee award, detailed account of discovery

abuses, and articulation of chosen sanctions evinced caution and careful consideration).

Point V is denied.

 2. Second Sanctions Order, December 27, 2019

 In its second sanctions order, the trial court entered default judgment in favor of

Carmed 45. The trial court also ordered Huff to pay attorneys’ fees and costs associated

with the discovery disputes. Huff argues that this sanction was excessive, that the trial

court failed to make a finding of prejudice, failed to find contumacious and deliberate

disregard for the authority of the trial court, and failed to identify what discovery Huff had

failed to provide by the time of the sanctions order. Under the circumstances here, we find

the trial court did not abuse its discretion.

 The trial court noted in its first sanctions order of December 28, 2018 that if Huff

did not provide discovery responses within 10 days, the court would consider striking

Huff’s pleadings and entering a default judgment. On January 3, 2019, Huff filed an

emergency request for time and to file the requested documents under seal, because such

documents included invoices, customer lists, pricing and financial data, again arguing that

Carmed 45 requested proprietary information that would be detrimental to his business to

disclose. On January 5, 2019, Huff filed a motion to reconsider the trial court’s denial of

his motion to bifurcate proceedings and to vacate the trial court’s order of reference to the

special master. Huff also filed writs in both this Court and the Missouri Supreme Court,

dispute. The trial court did not abuse its discretion in not requiring Carmed 45 to send an additional good
faith letter prior to filing its motion for sanctions under the circumstances.

 20
all of which were denied. On January 17, 2019, Huff produced approximately 6,000 pages

of documents to Carmed 45, which included Huff’s invoices and business transactions

since Huff left the partnership with Carmed 45. Huff designated all of these documents as

“for attorneys’ eyes only.” Huff also filed a renewed motion to amend the protective order

on January 17, 2019, requesting that the court allow Huff to designate all information

regarding customers and pricing as “for attorneys’ eyes only” and not only such

information from after March 31, 2017, as the protective order then allowed. Carmed 45

moved for sanctions on January 20, 2019.

 The trial court held a hearing on January 24, 2019. Carmed 45 notified the court

that it had received Huff’s invoices, though many of them were improperly designated as

“for attorneys’ eyes only” rather than as “confidential” under the terms of the protective

order. Carmed 45 also stated that communications related to PDR work, customer lists,

journals, ledgers, account books, contracts with customers, appointment books and

calendars, tax returns, financial statements, and bank records remained missing. Huff

responded that he did not keep many of these in the regular course of his business and that

he had turned over what he had, except for tax returns, which Huff had made available for

inspection. Huff also argued that his financial data was stored in Quickbooks, a business

accounting software, and as such could not be produced. The trial court told Huff that the

information in Quickbooks was discoverable and its presence in a computer was not a

justifiable reason for failing to disclose the financial information.

 The court denied Huff’s motion to amend the protective order and took the other

motions under submission. On February 7, 2019, Huff produced a document denominated

“Transaction Report,” which Huff’s accountant prepared from the data in Quickbooks.

 21
Huff designated the document “for attorneys’ eyes only.” On June 12, 2019, the trial court

held a status conference, at which the parties discussed remaining discovery issues and the

court took the second motion for sanctions under submission. On October 25, 2019,

Carmed 45 sent Huff a good faith letter outlining remaining discovery deficiencies,

including missing photographs of PDR work Huff performed, communications regarding

PDR work, and tax returns, as well as items improperly designated “for attorneys’ eyes

only.” On December 27, 2019, the trial court granted the motion for sanctions and made

the following findings:

 The court’s attempt to resolve this dispute both with court orders
 and with orders from a Special Master has not been successful.
 The court has previously found that a protective order was the
 appropriate remedy to provide what otherwise might be trade
 secret information . . . . [Huff] continue[s] to object and file
 Motions to reconsider which have been denied and yet [Huff]
 has failed to produce the discovery subject to a protective order
 or otherwise. The court finds this continuing failure to follow
 the court . . . rulings to be willful and wanton.”

 The trial court did not abuse its discretion in entering this sanctions order. As noted

above, Rule 61.01 provides that the court may take action that is “just,” including striking

pleadings and entering default judgment as a sanction for both a failure to answer

interrogatories and a failure to produce documents. Rule 61.01(b)(1), (d)(2). “[A]n order

striking a party’s pleadings is justified and does not constitute an abuse of discretion where

the record sufficiently shows, (1) the disobedient party engaged in a pattern of repeated

disregard of the obligation to comply with the rules of discovery, i.e., the party has

demonstrated a contumacious and deliberate disregard for the authority of the trial court;

and (2) the opposing party was prejudiced thereby.” Frontenac Bank v. GB Invs., LLC,

528 S.W.3d 381, 390 (Mo. App. E.D. 2017). The rule does not require the trial court to

 22
make specific findings regarding either showing. Binder v. Thorne-Binder, 186 S.W.3d

864, 867 (Mo. App. W.D. 2006).

 Here, the record reveals that Huff repeatedly disregarded his obligations to answer

interrogatories and produce documents pursuant to Carmed 45’s discovery requests, and

that Carmed 45 was prejudiced thereby. Huff presented his argument regarding the

proprietary nature of the discovery sought by Carmed 45 on numerous occasions to the

trial court, and the trial court repeatedly denied Huff’s requests to stay or bifurcate

proceedings and ordered Huff to produce the requested discovery. Huff responded by

raising the same arguments the trial court denied. Although Huff did eventually produce

thousands of pages of invoice and customer data, as well as a transaction report prepared

by his accountant, he designated all documents “for attorneys’ eyes only” in partial

violation of the protective order, which allowed such designation only for transactions

occurring after March 31, 2017. 15 Other documents, including tax returns, Huff never

produced. This reveals a pattern of deliberate disregard of the trial court’s authority. See

Frontenac Bank, 528 S.W.3d at 390; Holm v. Wells Fargo Home Mortgage, Inc., 514

S.W.3d 590, 597 (Mo. banc 2017) (finding party’s failure to produce documents and

respond to written discovery after orders by court and special master, along with continuing

15
 Huff’s argument that sanctions were premature because the protective order outlined a process for objecting
to a party’s designation, and Carmed 45 failed to follow that process, is disingenuous. The record does not
reveal a good faith production of documents and a good faith dispute about the proper designation. Rather,
at the same time Huff produced all documents with the designation “for attorneys’ eyes only,” he asked the
trial court to modify the protective order to allow that designation on all documents. Huff had been told on
multiple prior occasions that he was to follow the protective order, and he was fully aware that his discovery
responses violated the order. Accordingly, the trial court found in its final judgment that Huff’s “violation
of the Court’s Protective Order was deliberate, as the Court had previously denied [Huff]’s motions seeking
to expand the temporal scope of the ‘Attorneys’ Eyes Only’ designation under the Protective Order.” In light
of Huff’s intentional disregard for the protective order’s terms, the trial court did not abuse its discretion in
sanctioning Huff before enforcing the protective order’s provision that Carmed 45 must object to any
designation it believes is improper. Moreover, the failure to properly designate documents per the protective
order was only one basis for the trial court’s sanctions here.

 23
to assert previously overruled objections to discovery, contributed to finding of flagrant

disregard of trial court’s authority).

 Further, the record supports a finding that Carmed 45 was prejudiced by Huff’s

actions. Carmed 45’s claim of violation of the non-compete agreement depended upon

Huff’s business transactions in the years immediately following Huff’s departure from the

partnership with Carmed 45. Carmed 45 was not able to prosecute its case without such

information. Even when Huff did disclose responsive information, over a year after

Carmed 45 served its discovery requests, the designation of “for attorneys’ eyes only”

prohibited Carmed 45’s attorneys from discussing the information with their clients in

order to confirm whether Huff did in fact compete with Carmed 45. Huff’s withholding of

additional requested information beyond invoices would have hindered Carmed 45 from

determining the extent of Huff’s violations of the non-compete clause. Though the trial

court’s sanctions order did not include a finding of prejudice, the court’s judgment

following the hearing on damages stated that Huff’s actions prejudiced Carmed 45 and

caused it to incur additional and unnecessary attorneys’ fees and costs. The trial court did

not abuse its discretion in entering default judgment here. 16 Point VI is denied.

 Point VII

16
 Huff again argues that the trial court abused its discretion in its second sanctions order because the court
failed to enforce Local Rule 33.5. Given that this was the second motion for sanctions regarding the same
discovery, after the court had been clear that it would entertain a motion for default judgment should Huff
not comply with the order to complete discovery, we do not find this to be an abuse of discretion. The trial
court stated during the sanctions hearing, “There is absolutely zero trust and faith that [Huff is] going to
provide this information based upon the history of the litigation [in that there] hasn’t been a single thing that
has been turned over without a tremendous legal battle . . . . So the idea that they’re going to just all of a
sudden provide all of the relevant information in a forthcoming way isn’t there.” Under these circumstances,
the court did not abuse its discretion in foregoing the requirement of another good faith letter. Additionally,
while the second motion for sanctions was pending, after the trial court had held a status conference
discussing remaining discovery issues, Carmed 45 sent a second good faith letter to Huff to resolve the
remaining disputes and potentially render moot the sanctions motion.

 24
 Huff argues that the trial court abused its discretion in barring Huff from cross-

examining witnesses and introducing evidence at the hearing on damages. He further

argues that excluding such participation violated due process in that the court did not enter

an order prior to the hearing or provide notice prior to the hearing that Huff would not be

permitted to cross-examine witnesses or present evidence. We disagree.

 As with the decision to impose any sanctions under Rule 61.01, the trial court has

discretion to deny the right to cross-examine witnesses and present defenses to a party who

has failed to participate in discovery under the rules. Davis v. Chatter, 270 S.W.3d 471,

476 (Mo. App. W.D. 2008) (quoting Karolat v. Karolat, 151 S.W.3d 852, 857 (Mo. App.

W.D. 2004)). Such sanctions may be entered “upon motion and reasonable notice to other

parties.” Rule 61.01(d). While prohibiting a party from cross-examining witnesses and

presenting a defense is a harsh sanction, such prohibition is proper where it would be unfair

to allow a party who has withheld discovery to utilize the very evidence withheld in support

of their own defense. See Davis, 270 S.W.3d at 479.

 Such is the case here. Huff continued to resist disclosing discovery materials that

would have allowed Carmed 45 to prosecute its case, and then argued for the right to cross-

examine witnesses from the vantage point of being privy to and using evidence that Carmed

45 wrongfully lacked. Moreover, the sanction of a default judgment “presume[s] that no

merit exists in the asserted defense in light of the failure of the errant party to produce the

information necessary to dispose of the cause.” Nober v. Marcotte, 134 S.W.3d 651, 662

(Mo. App. E.D. 2004). Denying Huff the ability to present evidence supporting his asserted

defense is consistent with the entry of default judgment as a sanction here. Finally, the

trial court gave notice that it was considering default as a sanction in ruling upon the first

 25
sanctions motion, and it further gave notice during the status conference in June of 2019,

when it took that motion under submission. We find no abuse of discretion on the part of

the trial court, nor a violation of Huff’s due process rights. See Karolat, 151 S.W.3d at

859-60 (holding party had reasonable notice of sanctions, including inability to cross-

examine witnesses at hearing, where trial court warned party of potential sanction of

default judgment and party still did not complete discovery). Point denied.

 Point VIII

 Huff argues the trial court erred in allowing Carmed 45’s attorney, Shaun Broeker

(Broeker), to testify regarding damages because he was never disclosed as a witness, he

was not qualified as an expert witness, and he was inherently biased as an advocate for

Carmed 45. 17 We disagree.

 We review a trial court’s ruling regarding the admission of evidence for an abuse

of discretion. St. Louis County v. River Bend Estates Homeowners’ Ass’n, 408 S.W.3d

116, 123 (Mo. banc 2013). Rule 4-3.7 of the Missouri Rules of Professional Conduct

“generally prohibits an attorney from simultaneously serving as an advocate and witness

at a trial.” State v. Mason, 862 S.W.2d 519, 521 (Mo. App. E.D. 1993). “However, this

rule governs the ethical conduct of attorneys and is not a rule of evidence.” Id. The

comments to Rule 4-3.7 state that, “the opposing party has proper objection where the

combination of roles may prejudice that party’s rights in the litigation.” Rule 4-3.7,

comment 2.

17
 To the extent Huff argues in Point VIII that the trial court abused its discretion in admitting certain exhibits
during Broeker’s testimony, we do not address these arguments because they were not included in Huff’s
point relied on. Rule 84.04(e); City of Sullivan v. Truckstop Restaurants, Inc., 142 S.W.3d 181, 193 (Mo.
App. E.D. 2004) (“We need not consider errors raised for the first time in the argument portion of the brief
that are not raised in the point relied on”).

 26
 We find no abuse of discretion in the trial court’s admission of Broeker’s testimony.

The record reveals that Broeker did not testify as an expert witness. Rather, Broeker

identified the invoice information that Huff had produced, which was designated “for

attorneys’ eyes only,” and Broeker testified regarding which of those clients reflected in

the invoices were located within the Operations Area of Carmed 45. Realistically, given

the designation of the documents Huff disclosed, only attorneys could testify to the identity

of the documents in order to have them admitted as exhibits. Further, Broeker did not offer

any opinion regarding the documents’ contents, he simply identified them and read the “for

attorneys’ eyes only” designation. We also find no abuse of discretion in admitting

Broeker’s testimony regarding the location of certain clients listed on the invoices, again,

given the fact that such information was contained only in documents designated as “for

attorneys’ eyes only.” Any prejudice to Huff from such testimony came from his own

decision to designate the documents as “for attorneys’ eyes only” in clear and intentional

violation of the protective order. Point denied.

 Points IX and XI

 In Point IX, Huff argues the trial court erred in entering judgment for Carmed 45

because the non-compete clause is unenforceable as a matter of law, in that the geographic

scope is national and the temporal scope includes an automatic extension provision. In

Point XI, Huff argues that the trial court accordingly erred in entering an injunction

extending the non-compete period because the contract violates public policy, and the

injunction creates an illegal double recovery. Because both points concern the validity of

the non-compete clause, we discuss them together.

 27
 As a threshold matter, Carmed 45 argues that these points address the underlying

merits of its breach-of-contract claim, and we need not review such arguments given that

a default judgment for a plaintiff rendered as a sanction under Rule 61.01 presumes that

there is no merit in the defendant’s asserted defense. See Simpkins v. Ryder Freight Sys.,

Inc., 855 S.W.2d 416, 20-21 (Mo. App. W.D. 1993). “It is true that the default judgment

under Rule 61.01 is treated as a judgment establishing [the defendant]’s liability after trial

by the court.” Scott v. LeClercq, 136 S.W.3d 183, 193 (Mo. App. W.D. 2004). However,

this assumes the plaintiff has properly pled a cause of action that would, were the facts

found in the plaintiff’s favor, entitle him or her to judgment as a matter of law. See In re

Marriage of Dickey, 553 S.W.2d 538, 539 (Mo. App. 1977) (default judgment as sanction

“renders the cause uncontested and subject to judgment”). Because Rule 61.01 does not

provide a presumption that the plaintiff’s cause of action is properly pled as a matter of

law, we will consider Huff’s merit-based legal arguments here. 18 We review legal

questions in a court-tried case de novo. Pearson v. Koster, 357 S.W.3d 36, 42 (Mo. banc

2012).

 Huff first argues that the non-compete clause here was unenforceable because the

geographic scope is potentially the entire United States, and the temporal scope is

potentially infinite. We disagree. However, Huff further argues that the trial court erred

in entering an injunction extending the non-compete period two years from the date of

judgment, and we agree.

18
 We do not imply that merit-based factual arguments would receive the same consideration. The effect of
a Rule 61.01 sanction of default judgment for the plaintiff is to find liability on the part of the defendant;
essentially, to find the facts in favor of liability on the plaintiff’s claims as a sanction for a failure to participate
in discovery, in light of the presumption that the asserted defenses have no merit. Thus, merit-based
arguments regarding the sufficiency of the evidence to support liability cannot be reviewed on appeal of such
a judgment. See Duvall v. Maxey, 249 S.W.3d 216, 220-21 (Mo. App. W.D. 2008).

 28
 “Covenants not to compete are not favored in the law.” Sturgis Equip. Co. v. Falcon

Indus. Sales Co., 930 S.W.2d 14, 16 (Mo. App. E.D. 1996). However, in balancing the

competing interests between employers’ risk of losing customers and business secrets and

employees’ interest in having mobility in their employment endeavors, “Missouri courts

generally enforce a non-compete agreement if it is demonstratively reasonable.” Whelan

Sec. Co. v. Kennebrew, 379 S.W.3d 835, 841 (Mo. banc 2012). Such agreements must be

“narrowly tailored temporally and geographically” and are “enforceable only to the extent

that the restrictions protect the employer’s trade secrets or customer contacts.” Id. at 841-

42 (internal quotations omitted). The employer has the burden to prove that the agreement

is reasonable and protects such legitimate interests. Id. Here, the record and the trial

court’s judgment support a finding that the geographic limitations and two-year scope of

the non-compete clause were reasonable.

 First, regarding the geographic limitations, the non-compete clause provided that

Huff may not “[d]irectly or indirectly . . . engage in or locate another business that provides

[PDR] services within a 50 [-] mile radius of the Operations Area.” 19 The parties’ operating

agreement defined the Operations Area, effective by amendment on March 5, 2013. A map

of the Operations Area was attached to Carmed 45’s second amended petition, and it

essentially reflected a large portion of southern Illinois. A 50-mile radius is within what

many courts have found a reasonable geographic scope. Whelan, 379 S.W.3d at 846-47

(citing cases; noting “[c]onsiderable precedent in Missouri supports the reasonableness of

19
 Huff bases much of his argument on another provision in the non-compete clause, which contained a
prohibition on PDR work “within a 50 [-] mile radius of the geographic area in which any affiliate of the
Partnership or of the Class A Partners provided such services during the time that [Huff] held his Percentage
Interest.” However, the trial court did not rely on this provision, but found Huff had violated the above-
quoted clause describing a 50-mile radius from Carmed 45’s Operations Area. As such, we analyze the
validity of only that portion of the non-compete clause’s geographical limitation.

 29
a two-year non-compete agreement for an operations manager that is limited to 50 miles

from where services were rendered by the employee”); see also Mid-States Paint & Chem.

Co. v. Herr, 746 S.W.2d 613 (Mo. App. E.D. 1988) (finding radius of 125 miles reasonable

where majority of industrial coatings company’s customers were within such radius, trial

court had noted even 350-mile radius would have been reasonable).

 Second, the temporal scope of the non-compete clause was “the period of 24

months following the earlier of termination of this Agreement or termination of [Huff’s]

Interest plus any period of time during which [Huff] has violated the [non-compete

clause].” A two-year temporal scope has similarly been found to be reasonable. Whelan,

379 S.W.3d at 846-47 (citing cases). Carmed 45 made clear in its pleadings that its PDR

work was based on specialized proprietary information. Further, Huff had access to

Carmed 45’s PDR customer contacts in his capacity as a member of Carmed 45 who

performed PDR work. The trial court did not err in finding that the geographic limitations

and two-year scope of the non-compete clause were reasonable protections of Carmed 45’s

proprietary information and customer contacts.

 However, we find that the trial court’s injunction extending the non-compete

agreement for two years from the date of the judgment, based in part on the language of

the non-compete clause, is without support in the record. Our review of the trial court’s

entry of an injunction is the same as in any court-tried case: we will affirm the judgment

unless there is no substantial evidence to support it, it is against the weight of the evidence,

or it erroneously declares or applies the law. City of Greenwood v. Martin Marietta

Materials, Inc., 311 S.W.3d 258, 263 (Mo. App. W.D. 2010). “The ordinary rules of

contractual construction and enforcement are not necessarily applicable to non-compete

 30
agreements.” Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 28 (Mo. App. W.D. 2008)

(quoting Cont’l Research Corp. v. Scholz, 595 S.W.2d 396, 399 (Mo. App. E.D. 1980)).

Automatic time-extension provisions in non-compete agreements “are almost uniformly

disapproved.” Cont’l Research Corp., 595 S.W.2d at 402. Rather than simple enforcement

of contract terms, “the issue is the appropriateness and reasonableness of imposing

additional injunctive relief to extend from the time of the court’s order under the

circumstances of the case.” Id. at 400. Additionally, whether the plaintiff sought to secure

timely temporary relief is a “crucial factor” in the determination. Id. at 402.

 Here, the trial court gave two reasons for entering an injunction extending the non-

compete clause for two years from the date of the judgment: (1) that Carmed 45 never

received the benefit of the non-compete clause, to which Huff agreed to be bound; and (2)

Carmed 45 suffered and will continue to suffer irreparable harm if the non-compete clause

is not extended. Regarding the first, Carmed 45’s loss of benefit of the non-compete clause

is not an appropriate justification for an injunction extending the non-compete period.

While Huff did in fact wrongly deprive Carmed 45 of the benefit of the non-compete

clause, it does not follow that an extension is appropriate under the circumstances as they

stood at the time of the trial court’s judgment. See Willman v. Beheler, 499 S.W.2d 770,

778 (Mo. 1973), abrogated on other grounds by State ex rel. Leonardi v. Sherry, 137

S.W.3d 462 (Mo. banc 2004) (noting non-compete period had expired with no benefit to

former employer, but “realities of the situation may not be ignored”; concluding that to

enforce five-year period from date of judgment would be inequitable and “impose upon

[defendant] a much harsher penalty”). Rather, it was Carmed 45’s burden to show that the

 31
circumstances at the time of judgment, five years after Huff resigned from the partnership,

made such an extension appropriate. Carmed 45 failed to do so.

 Second, the trial court made a finding that Carmed 45 suffered and will continue to

suffer irreparable harm if the non-compete clause is not extended. However, this finding

stemmed from the trial court treating as true the allegations in Carmed 45’s second

amended petition, which included that “Carmed 45 would sustain irreparable loss and

damage if [Huff] should continue to violate the [non-compete clause].” There was no

hearing on this issue, and Carmed 45 did not present evidence at the damages hearing

regarding any ongoing or future harm due to Huff’s competition.

 While a default judgment entered as a sanction under Rule 61 determines the issue

of liability, it does not establish entitlement to damages. Scott, 136 S.W.3d at 193.

Similarly, a Rule 61 default judgment cannot establish entitlement to a prospective

injunction. We find nothing in the record supporting the trial court’s finding of ongoing

irreparable harm to Carmed 45 as of the date of the judgment. It has now been six years

since Huff left the partnership with Carmed 45, and it is unclear to what degree he is

currently competing with Carmed 45. 20 Cf. Cont’l Research Corp., 595 S.W.2d at 402

(noting record disclosed insignificant competition by former employee, concluding no

legitimate purpose of employer served by injunctive relief extending non-compete clause).

Moreover, the record is devoid of any attempt by Carmed 45 to seek temporary injunctive

relief once it discovered Huff’s violations. 21 See id. (finding employer’s failure to seek

20
 Huff argues that Carmed 45 admitted in its third amended petition that it no longer performs PDR work,
but we cannot rely on statements in a stricken pleading. There is no evidence in the record on this issue.
21
 This factor distinguishes the present case from the cases relied upon by the trial court in extending the non-
compete period. In each of those cases, the plaintiffs had sought temporary injunctive relief at the outset.
See Silvers, Asher, Sher & McLaren, M.D.s Neurology, P.C. v. Batchu, 16 S.W.3d 340 (Mo. App. W.D.
2000) (employer filed petition seeking injunction within one month of former employee’s competition
activity; appellate court affirmed running of injunction from date of trial court’s judgment rather than date of

 32
temporary injunctive relief was “more crucial factor” than extent of former employee’s

competition where employer amended petition almost three months after termination to

request temporary injunction but never called such request for hearing or sought temporary

injunctive relief prior to amending petition).

 Given the record here, we are pressed to find any indication at this point that an

injunction would be less than punitive. 22 See id. at 400 (“Protection of the employer, not

punishment of the employee, is the essence of the law”); see also Sturgis Equip. Co., 930

S.W.2d at 17. Thus, we reverse the trial court’s entry of an injunction extending the non-

compete period. Points granted in part.

 Point X

 Huff argues that the trial court erred in entering a liquidated damages judgment

against him without evidence of actual damage sustained by Carmed 45. We agree.

 “In Missouri, a plaintiff must show the existence of actual harm or damages before

a liquidated damages clause can be triggered.” Kan. City Live Block 139 Retail, LLC v.

Fran’s K.C. Ltd., 504 S.W.3d 725, 731 (Mo. App. W.D. 2016) (quoting Grand Bissell

Towers, Inc. v. Joan Gagnon Enters., Inc., 657 S.W.2d 378, 379 (Mo. App. E.D. 1983)).

“The showing of harm or damage necessary to trigger the liquidated damages clause need

not be a precise dollar amount but simply a showing that some harm or damage did in fact

employment termination); Furniture Mfg. Corp. v. Joseph, 900 S.W.2d 642 (Mo. App. W.D. 1995) (plaintiff
had sought temporary restraining order upon learning of former employee’s competition; appellate court
remanded for consideration of whether injunctive relief was appropriate, noting extension of term from date
of decree “would not be inequitable” if trial court determined relief is warranted).
22
 We also note the non-compete clause contains a severance clause, stating in part, “It is the intention of the
parties to restrict [Huff]’s activities only to the extent necessary for the protection of [Carmed 45’s members’]
legitimate business interests. To the extent that any [provision of the non-compete clause] shall be
determined to be invalid or unenforceable . . ., [it] shall be automatically amended [to] grant [Carmed 45’s
members] the maximum protection and restrictions on [Huff]’s activities permitted by applicable law in such
circumstances.”

 33
occur.” Grand Bissell, 657 S.W.2d at 379 n.3. The rationale is that without some evidence

of actual harm, a liquidated damages clause becomes a penalty clause, which is

unenforceable. See id. at 379 n.4.

 Here, the trial court properly conducted a hearing on damages following its entry

of default judgment in favor of Carmed 45 as a sanction for Huff’s failure to participate in

discovery. See Holm v. Wells Fargo Home Mortgage, Inc., 514 S.W.3d 590, 901 (Mo.

banc 2017) (“Even where a defendant defaults in a case or incurs sanctions striking its

pleadings and preventing it from participating at trial, there must still be a hearing to prove

damages”). At the hearing, the evidence submitted by Carmed 45 related solely to the

calculation of liquidated damages under the operating agreement. Carmed 45 offered no

evidence of actual harm sustained due to Huff’s breach of the non-compete clause. As

such, the trial court erred in entering judgment pursuant to the liquidated damages clause.

Point granted.

 Conclusion

 The trial court properly granted judgment on Carmed 45’s second amended

petition, as it had not been abandoned upon Carmed 45’s improper filing of a third amended

petition. The trial court did not abuse its discretion in referring discovery to a special

master, nor did the trial court violate Huff’s due process rights in adopting the orders of

the special master. We find no abuse of discretion in the trial court’s imposition of

sanctions against Huff due to continued discovery violations. Further, the trial court did

not abuse its discretion in permitting Broeker to testify at the damages hearing and

prohibiting Huff from presenting evidence or cross-examining witnesses at the damages

 34
hearing. The trial court’s default judgment in favor of Carmed 45 as well as its imposition

of monetary sanctions is affirmed.

 However, because Carmed 45 failed to produce evidence of actual damage due to

Huff’s breach of the non-compete clause, we must reverse the trial court’s award of

liquidated damages. Further, the trial court erred in extending the non-compete period

because Carmed 45 failed to seek temporary injunctive relief or present any evidence of

ongoing harm at the damages hearing or otherwise. Thus, we reverse the trial court’s award

of liquidated damages as well as the associated prejudgment interest. We also reverse the

trial court’s injunction extending the non-compete period. We remand to the trial court for

a recalculation of damages, interest, and fees, consistent with this opinion.

 Gary M. Gaertner, Jr., P.J.

Robert M. Clayton, III, J., and
Michael E. Gardner, J., concur.

 35